Holly A. BATHER, Respondent,

v.

William J. BATHER, Appellant.

No. WD 64138.

Missouri Court of Appeals,
Western District.

June 21, 2005.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 2005.

Application for Transfer Denied
Sept. 20, 2005.

J. Michael Murphy, Liberty, MO, for appellant.

Steven D. Wolcott, Liberty, MO, for respondent.

Before HOLLIGER, P.J., BRECKENRIDGE and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Judge.

William J. Bather (Father) appeals the trial court's judgment modifying, on the motion of his former wife, Holly A. Bather, now Logan (Mother), physical custody parenting time of their daughter. Father

claims that there was insufficient evidence of a change in circumstances that would authorize modification of custody under section 452.410, RSMo 2000.[1] He further claims that there was insufficient evidence to permit restricting his visitation under section 452.400.2, and that the court erred in failing to make the findings he requested on the issue of restricting his visitation.

This court finds that, because the custodial arrangement in the judgment modified was designated as joint physical custody, the modification of the parenting time provisions was a modification of custody, governed by section 452.410. This court further finds that there was sufficient evidence that the modification of the parenting plan to establish a graduated schedule from short periods of supervised visitation to longer periods of unsupervised parenting time would serve the child's best interests. There was insufficient evidence, however, that the modification of the schedule for parenting time in paragraph 1, subparagraphs (f) and (g), permitting Father to have unsupervised parenting time only on alternating weekends and holidays, would serve the child's best interests. Therefore, the trial court erred in a portion of its modification of the physical custody parenting time provisions. The judgment is reversed, and the cause is remanded to the trial court with directions to modify the parenting plan to eliminate the provisions for unsupervised alternating weekends and holidays in paragraph 1, subparagraphs (f) and (g) and to, instead, substitute the physical custody parenting time provisions for unsupervised parenting time as ordered in the February 2001 modification judgment, which alternated weeks between parents. In addition, given the interrelatedness of child custody and child support, the trial court is directed to reconsider the issue of child support on remand. Father's remaining points on appeal are without merit and, therefore, are denied.

## Factual and Procedural Background

Father and Mother were married on March 8, 1991. Their daughter, Lauren Elizabeth Bather, was born on June 15, 1995. Father and Mother separated in February 1996, and their marriage was dissolved on December 30, 1997. The dissolution judgment provided that Father and Mother share joint legal and physical custody of Lauren. Mother was to have parenting time with Lauren each weekend from 8:30 A.M. Saturday until the following Monday at 5:30 P.M., and Father was to have parenting time at all other times. Additionally, Father had the right to select up to thirteen non-consecutive weekends per year when Lauren would remain with him through Saturday. On those weekends that Lauren would remain with Father, Lauren was to return to Mother at 8:30 A.M. Sunday and stay with Mother until 8:30 A.M. the following Tuesday. The judgment also set out a parenting time schedule for the holidays. Because the parties equally divided their parenting time, no child support was ordered.

Mother married David Logan in November 1998. Subsequently, on February 6, 2001, the trial court entered a judgment modifying the physical custody parenting time provisions to implement an agreement reached by Mother and Father. Under the agreement, Mother and Father alternated weeks with Lauren, beginning at 5:30 P.M. each Sunday. During the weeks that Lauren was with Father, Mother had parenting time on Thursday evenings from 3:30 P.M. to 8:00 P.M. During weeks that Lauren was with Mother, Father also had this same two and one-half

1. All statutory references are to the Revised Statutes of Missouri 2000.

hour parenting time on Thursday evenings.

The parties abided by this parenting time schedule until June 2002, when Mother claimed that Lauren disclosed that Father had sexually abused her. Mother called the Division of Family Services Abuse Hot Line and the Liberty Police Department. Two days later, Mother e-mailed Father and told him that Lauren had reported being sexually abused in his home and that, on the advice of DFS and the Liberty Police Department, Mother was not going to allow Father, or anyone acting on his behalf, to have contact with Lauren.

Mother took Lauren to Children's Mercy Hospital to have her examined. The examination revealed no physical evidence to confirm sexual abuse. Nevertheless, the Clay County Prosecuting Attorney filed criminal charges against Father based upon the allegations of sexual abuse.[2] As a special condition of his bond, Father was not allowed any contact with Lauren while the criminal charges were pending.

On August 29, 2002, Mother filed a motion to modify joint legal and physical custody. In her motion, Mother alleged that, on June 7, 2002, a referral was made to DFS alleging that Father had sexually abused Lauren, and an investigation was occurring between the police department, the prosecuting attorney's office and others, including a determination by DFS "of a reason to suspect." Mother further alleged that the Clay County grand jury had issued an indictment charging Father with multiple felony counts, and a condition of Father's bond was that he have no contact with Lauren at the present time. Mother asked the court to modify the February

2001 judgment by ordering that Father have no parenting time with Lauren. Mother also asked for the appointment of a guardian ad litem.

Some of the criminal charges against Father were dismissed before the trial, and Father was acquitted of the remaining criminal charges in March 2003. In July 2003, Father filed a motion to modify custody. In his motion, he alleged that, since the February 2001 judgment, facts had arisen constituting a change of circumstances. Specifically, he alleged that Mother had "influenced said child into making false statements that [Father] improperly touched and abused his child"; Mother had "herself improperly touched and abused the parties' child"; Mother had "willfully deprived [Father] of his court-ordered custody and visitation and custody [sic]"; and "[t]he child's best interests, happiness, and welfare dictate and mandate that the primary custody of said child be granted to [Father], with reasonable visitation being granted to [Mother]." Father asked that custody be modified to grant him the majority of parenting time with Lauren, with Mother having parenting time on every other weekend, alternating holidays, and two weeks in the summer.

One week after filing his motion to modify, Father filed a motion asking that Mother be held in contempt. In this motion, Father alleged that he had not been able to see Lauren since June 9, 2002. He further alleged that, despite his having been acquitted of the criminal charges, Mother still refused to let the child see Father "to even begin 'break in' visitation periods." According to Father, he made "numerous attempts to work out these visi-

2. The record does not specify the number or nature of the sexual abuse charges against Father.

tation periods with [Mother], but [he was] still unreasonably, willfully, and without good cause being denied any visitation with his daughter, despite this court's order."

The court held a hearing on Father's motion for contempt. On August 28, 2003, the court entered a temporary order requiring Mother and Father to participate in the Transitions Program. The court ordered Mother to deliver Lauren to the Transitions Program facility so that Father could have a series of eight visits with the child. The court also ordered Mother to produce Lauren for one ninety-minute visit with Father and the guardian ad litem. The trial court took the motion for contempt under advisement. In a separate order, the court ordered Mother, Father, Lauren, Lauren's paternal grandmother, and Lauren's stepfather to submit to psychological evaluations. In December 2003, Father filed a family access motion, and noticed the motion for hearing on December 10, 2003.[3] The court declined to take up the motion at that time and set all motions for trial on February 25, 2004.

Trial was held on the parties' motions to modify on February 25 and March 8–10, 2004. Father testified that the only way to ensure Lauren did not make false allegations in the future was to have 24–hour supervised visitation whenever she was with either party. Rosalyn E. Inniss, M.D., the psychiatrist the court appointed to evaluate the parties, also recommended supervised visitation as a measure of protection for all parties. On April 6, 2004, the court entered its judgment of modification. In the judgment, the court found that a substantial and continuing change of circumstances had occurred that rendered the prior physical custody order unreasonable. Specifically, the court stated:

Said change of circumstances includes the following:

a. Insufficient evidence was presented to the Court to support [Mother]'s allegation of abuse of the minor child by [Father];

b. Despite insufficient evidence to support said allegation, [Mother] is convinced that [Father] abused the minor child;

c. The minor child likewise appears to believe that said abuse occurred.

The court further stated that, "[a]s the result of the beliefs of [Mother] and the minor child, it is in the best interest of the minor child that both parties continue to have joint legal and joint physical custody of the minor child with changes in the physical custody arrangement."

The court's modified parenting plan provides that Mother has "primary physical custody" of Lauren.[4] The plan then set forth a schedule of Father's parenting time. Under the schedule, Father and Lauren are to participate in the Transitions Program for eight weeks. After those eight weeks, Father is to have parenting time, supervised by the paternal grandmother, every Saturday from 10:00 A.M. to 6:00 P.M., for eight weeks. After this eight-week period, Father is to have parenting time, supervised by the paternal grandmother, on eight alternating weekends on Saturday from 10:00 A.M. to 6:00 P.M. and on Sunday from 10:00 A.M. to 6:00

---

3. This motion was not included in the legal file.

4. It should be noted that "primary physical custody" is not a custodial arrangement authorized under law. *See Aurich v. Aurich,* 110 S.W.3d 907, 912 (Mo.App.2003) (citing *Loumiet v. Loumiet,* 103 S.W.3d 332, 338 (Mo.App. 2003)) (noting that section 452.375.1(1), RSMo 2000, does not provide for "primary physical custody" or a "primary physical custodian").

P.M. and every Wednesday evening from 5:00 P.M. to 7:00 P.M., over a period of sixteen weeks. After this sixteen-week period, Father is to have parenting time, supervised by the paternal grandmother, on eight alternating weekends from Friday at 6:00 P.M. until Sunday at 6:00 P.M. and every Wednesday from 5:00 P.M. to 7:00 P.M., over a period of sixteen weeks. After this sixteen-week period, Father is to have unsupervised parenting time on alternating weekends from Friday at 6:00 P.M. until Sunday at 6:00 P.M. and every Wednesday from 5:00 P.M. to 7:00 P.M., until further order of the court. The court awarded parenting time with each parent on alternating holidays and, if any of Father's holidays occurs during Father's supervised parenting time periods, Father's holiday parenting time is also to be supervised by the paternal grandmother. Father appeals.

## Standard of Review

■ This court's review of a court-tried case involving matters of child custody is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Baxley v. Jarred*, 91 S.W.3d 192, 196 (Mo.App.2002). Thus, this court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. The trial court is afforded greater deference in determining child custody than in other matters. *McCubbin v. Taylor*, 5 S.W.3d 202, 206 (Mo.App.1999). This court views the evidence and all reasonable inferences therefrom in the light most favorable to the judgment and disregards all contrary evidence and inferences. *Cullison v. Thiessen*, 51 S.W.3d 508, 511 (Mo.App.2001). The trial court's determination of custody will not be disturbed on appeal unless this court is firmly convinced it is erroneous and the award is against

the child's best interests and welfare. *Newsom v. Newsom*, 976 S.W.2d 33, 36 (Mo.App.1998).

## Trial Court Modified Custody, Not Visitation

■ On appeal, Father asserts in one of his points that the court's judgment constituted a modification of custody and, in his other two points, that the court's judgment constituted a modification of visitation. This court has recently held that, where the custodial arrangement in the judgment being modified was designated as "joint physical custody," "an attempt to modify the time that the child mentioned in the judgment is with either parent is an attempt to modify custody and requires proof of the elements in section 452.410.1, i.e. change in circumstances and that modification is in the best interests of the child." *Timmerman v. Timmerman*, 139 S.W.3d 230, 236 (Mo.App.2004). Where the judgment being modified designated the custodial arrangement as "sole physical custody with visitation," "an attempt to modify visitation is governed by section 452.400.2." *Id.*

The judgment being modified in this case, the February 2001 modification judgment, designated the arrangement as "joint physical custody" and awarded Mother and Father alternating weeks of parenting time. Thus, any change in the parenting time awarded either parent constituted a modification of custody under section 452.410.1 and will be reviewed as such. *See id.*

## Insufficient Evidence Modified Parenting Plan in Child's Best Interests

■ In his first point, Father contends there was insufficient evidence of a change in circumstances permitting modifi-

cation and insufficient evidence that modification is in Lauren's best interests. The trial court may modify custody if "it finds, upon the basis of facts that have arisen since the prior decree ... that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." Section 452.410.1. "When parents have joint physical custody, each parent is a custodian within the meaning of the statute." *Timmerman,* 139 S.W.3d at 236. A presumption exists that a parent with custody remains suitable. *McCubbin,* 5 S.W.3d at 207. Thus, the parent requesting the change of custody has the burden of proving the change in circumstances warranting custody modification. *Id.*

In this case, the court found that a change in circumstances warranting modification has occurred in that, although there is insufficient evidence to support Mother's allegation that Father abused Lauren, Mother is "convinced" that Father abused Lauren and, likewise, Lauren "appears to believe that said abuse occurred." Because of Mother's and Lauren's beliefs that Father abused Lauren, the court found that it was in Lauren's best interests to modify the February 2001 judgment to reduce Father's parenting time and make his parenting time supervised for an initial period, per the schedule set forth earlier in this opinion.

■ Father first argues that Mother's and Lauren's beliefs do not constitute a change in circumstances warranting modification of custody. Contrary to his claim of error on appeal, however, Father filed a motion to modify custody, in which he alleged that since the February 2001 judgment, facts had arisen constituting a change of circumstances. Mother asserted in her motion to modify that the substantial change of circumstance was Father's

sexual abuse of Lauren. Father asserted that the substantial change of circumstance was the fact that Mother had influenced Lauren "into making false statements that [Father] improperly touched and abused" her and Mother's denial of parenting time to him, as a result of these false allegations. The judgment Father challenges on appeal was entered after a trial on both Mother's and Father's motions to modify. In effect, in finding there was insufficient evidence to support Mother's allegations that Father abused Lauren, the trial court reached the conclusion sought by Father in his motion to modify custody, which is that a substantial change in circumstances had arisen because of the false allegations of sexual abuse. Having pleaded and presented evidence of a change in circumstances warranting modification of custody, Father cannot now be heard to complain that there was no change in circumstances. *See, e.g., Howsmon v. Howsmon,* 77 S.W.3d 752, 757 (Mo. App.2002) (party bound by position taken in circuit court and cannot complain on appeal of alleged error which party joined in, acquiesced, or invited). Therefore, Father's only cognizable argument on appeal is that the trial court's modification of the parenting time was not in Lauren's best interest.

■ "In evaluating the best interests of the child for purposes of custody modification, the court is required to consider all relevant factors set forth in Section 452.375.2." *Sanders v. Busch,* 123 S.W.3d 311, 314 (Mo.App.2003). The eight factors in section 452.375.2 are:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively

perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

The facts and circumstances of this case concern all of the factors, except (7), the intent of either parent to relocate. The evidence will be discussed generally, without reference to any particular factor.

The relevant evidence, at trial, was Mother's testimony that, because of her and Lauren's beliefs that Father sexually abused Lauren, she was seeking not just to reduce Father's parenting time, but to eliminate it. If the court chose to permit Father to have contact with Lauren, however, Mother believed that she needed to have the legal ability to deny Father contact with Lauren until Lauren is eighteen years old if, in Mother's opinion, the contact is not "safe." Mother has acted on her belief that Father abused Lauren and should have no contact with Lauren by repeatedly denying Father and paternal grandmother any contact with Lauren. Mother has denied contact even though Father was acquitted of all criminal charges in March 2003, and even though a mental health professional opined that Lauren would not be harmed by such contact. Father had no contact with Lauren from June 2002 until September 2003, after the court ordered Mother to make Lauren available to participate in the Transitions Program with Father.

Mother attempted to negatively influence the Transitions Program visits by communicating to Betsy Baird, the Transitions Program Director, that Lauren was afraid to see Father and did not want to see him. Mother also told Ms. Baird that Lauren "was angry because she wanted to ask her father some questions about the sexual abuse." Contrary to Mother's statements, Ms. Baird, who stayed with Father and Lauren for the entire first visit, observed that Lauren was initially shy and quiet but did not appear to be angry or afraid of Father, and Lauren did not confront him at all. Lauren and Father merely talked, played games, and ate together during the one and one-half hour visit. According to Ms. Baird, all of Father's eight visits with Lauren through the Transitions Program "went well." At the close of the Transitions Program visits, Father, Lauren and the guardian ad litem went to dinner together. The guardian ad litem testified that Lauren did not appear to be afraid of Father, nor did she appear to be reluctant to touch him or talk to him.

Lauren sat close to Father, leaned on him, laughed with him, and hugged him.

Despite the success of the Transitions Program visits and the dinner with the guardian ad litem, Mother continued to deny Father any contact with Lauren. When Father and Lauren's paternal grandmother attempted to pick up Lauren from school for a visit on November 24, 2003, Mother became hysterical, cried, and yelled at the school principal and two police officers, who had been called by the school principal. The principal testified that Mother indicated Father had raped and sodomized Lauren. One of the police officers recalled Mother's saying that Father had "raped his child"; and both officers testified that Mother said that Father had sexually molested Lauren. Mother also indicated to the police that she had an order that barred Father from having custody of Lauren. Despite Mother's inability to produce such an order, the officers refused to release Lauren to Father and, instead, let Mother take Lauren home.

To the degree it exists, Lauren's hesitancy about resuming contact with Father is not only based on Lauren's belief that the alleged abuse by Father actually occurred. Rather, Lauren's hesitance is attributable to Mother's denying any contact between Lauren and Father for over fifteen months and her telling Lauren that she does not want Lauren to see Father. Mother has acted on her belief that Father abused Lauren by making it clear to Lauren, who was eight at the time of trial, that she did not want her to visit Father. Mother admitted to telling Lauren that she does not think it would be "safe" for Lauren to be alone with Father now, and that she does not think there is a "safe way" for Lauren to have contact with Father. The record of Lauren's in-camera interview indicates that Lauren is very aware that Mother does not want her to see Father. Despite this, Lauren indicated that the more time she spent with Father, the easier it was for her to do so. In Dr. Inniss's opinion, "the relationship between father and daughter is salvageable and has the potential to continue." Dr. Inniss does not consider Lauren to be in imminent danger while with Father and found no reason to prohibit Father from having ongoing contact with Lauren.

Dr. Inniss offered her professional opinion as to the effect of Mother's belief on Lauren's welfare. In her report, Dr. Inniss stated that Mother "comes across as on a continual quest to keep things going until someone finds [Father] guilty of abusing Lauren," and it is Mother's intent "to try the allegations of sexual molestation of Lauren within the current court setting and in the context of visitation." Dr. Inniss believed it is "more than likely that [Mother] will continue to try and foster [Father's] being tried for the alleged abuse in various arenas until he is found guilty of what she believes has occurred." Indeed, Dr. Inniss opined that "[i]t is the intent and sole purpose of [Mother] [ ] that Lauren have as little contact with her biological father as possible and that Lauren, now at the age of eight, has become her full time child and that Lauren's family should be mother, [stepfather] and Lauren."

Dr. Inniss described the negative impact of Mother's conduct on Lauren thus far:

The saddest part of all is in regards to Lauren. Lauren precipitously lost contact with her father and grandmother after the allegations of sexual abuse. She lives with her mother and stepfather, neither of whom want or support Lauren having contact much less a relationship with her father. For Lauren the issue is not healing from alleged abuse but now the potential to loss [sic] of a parent in this instance her mother if

contact is reestablished with her father and the relationship continues and is mended.

Dr. Inniss reiterated this in her testimony at trial, stating that she believed, "very much so," that Lauren feels caught in the middle between her parents, and that it is possible that Lauren has concerns that "picking one parent loses the other parent[ ] somehow." Moreover, Dr. Inniss testified that she has concerns as to whether Mother could "emotionally be there for [Lauren] if she reattached to dad in a positive fashion."

Mother's belief that Father sexually abused Lauren has had a much greater negative impact on Lauren's welfare than Lauren's own apparent belief that Father sexually abused her. Although Mother indicated that contact with Father upsets Lauren and is emotionally difficult for her, the Transitions Program director and the guardian ad litem, both of whom witnessed Father with Lauren, testified that Lauren did not appear to be afraid of or angry at Father and, in fact, had a good time laughing and playing with him. Lauren indicated that she is nervous of resuming contact with Father not just because of the sexual abuse allegations, but because she has not seen him in a long time and she knows Mother does not want her to see Father. According to Dr. Inniss, Lauren is torn between her parents and is afraid of losing Mother if she resumes contact with Father.

Indeed, Dr. Inniss recommends that Father's parenting time with Lauren be supervised solely because of Mother's conduct. In her opinion, Mother will "overtly and covertly sabotage" Father's contact with Lauren. Dr. Inniss specifically stated that she is recommending supervision "not because I consider Lauren to be in imminent danger while with her father, but as a measure of protection *to all parties*." Dr.

Inniss opined that "further allegations are more than likely to occur," and supervision would be to "everyone's benefit" and "would also rend early witness to any further allegations."

■ On the basis of this evidence, it was proper for the court to restrict the custody plan while the abuse allegations were being investigated. It was proper for the court to slowly reintroduce Lauren to her Father through the Transitions Program and thereafter. Supervision was appropriate as both Father and Dr. Inniss testified that they believed supervision would be necessary and beneficial. There was no evidence to support a restriction of Father's parenting time, however, once Lauren and Father had an opportunity to reestablish their relationship. The only person who will substantially benefit from the court's modified parenting plan is Mother. Although Mother did not obtain the parenting plan she was seeking, which was that Father have no contact with Lauren until Lauren is eighteen or that Lauren's contact with Father be left to Mother's discretion, Mother did succeed in reducing and restricting Father's long-term parenting time significantly from the February 2001 modification judgment. Essentially, the trial court's judgment permits Mother to benefit from her persistence in believing that Father sexually abused Lauren. Her belief, however, has been deemed unsubstantiated in both Father's criminal trial and the trial in this case and has had a direct and substantial negative impact on Lauren's welfare.

Therefore, although the trial court's determination that a change of circumstances has occurred permitting modification is supported by sufficient evidence, there is insufficient evidence that the entirety of the modification ordered by the court is in Lauren's best interests. The evidence in this case indicates the modification of the

schedule for parenting time in paragraph 1, subparagraphs (f) and (g), permitting Father to have unsupervised parenting time only on alternating weekends and holidays is not in Lauren's best interests. Once Lauren and Father have had an opportunity to reestablish their relationship, the evidence does not support a long-term reduction in the amount of Father's parenting time. Accordingly, this cause is remanded to the trial court to remove these subparagraphs and, instead, substitute the parenting time provisions of the February 2001 modification judgment.

## No Section 452.400.2 Evidence or Findings Required

In his second point, Father asserts that the trial court erred in modifying custody and visitation without any evidence that Father's visitation would endanger Lauren's physical health or impair her emotional development. In particular, Father claims that before his visitation can be restricted, section 452.400.2 requires evidence that Father's visitation would endanger Lauren's physical health or impair her emotional development. In his third point, Father asserts that the trial court erred in failing to include in its judgment findings concerning whether his visitation would endanger Lauren's physical health or impair her emotional development. Specifically, Father claims that Rule 73.01(c) requires the trial court to include in its opinion findings on any controverted fact issues specified by the parties. Father contends that he made a request for a finding as to whether his custody and visitation would endanger Lauren's health or impair her emotional development and the trial court's failure to include such findings is reversible error. For ease of discussion, this court considers Father's points two and three together.

Under section 452.400.2, the trial court may modify visitation, "but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development." Section 452.400.2, however, is only applicable to a change in *visitation*. *Timmerman*, 139 S.W.3d at 234. As discussed above, the judgment being modified in this case, designated the arrangement as "joint physical custody" and awarded Mother and Father alternating weeks of parenting time. Thus, a change in parenting time awarded either parent constituted a modification of custody and not a change in visitation.

Section 452.410 governs modification of custody decrees, not section 452.400. *Id.* at 235. *See also P.L.W. v. T.R.W.*, 890 S.W.2d 688, 691 (Mo.App.1994) ("[section] 452.400.2 applies where, as in the instant case, the issue is whether visitation privileges should be restricted as opposed to whether custody should be transferred"). Section 452.410 has no requirement that evidence be adduced that a child's physical health or emotional development be impaired before custody is modified. Consequently, the trial court did not restrict Father's visitation within the meaning of section 452.400 and, therefore, evidence that visitation with Father would endanger Lauren's physical health or impair her emotional development before modifying custody was not required.

Finally, the trial court's failure to comply with Father's request for findings concerning whether his visitation would endanger Lauren's physical health or impair her emotional development does not mandate reversal in this case. "[F]ailure of a trial court to issue findings which were properly requested does not always require reversal." *In re Marriage of Flud*, 926 S.W.2d 201, 204 (Mo.App.1996).

The findings made in the trial court's judgment makes clear the basis for the court's ruling and permits meaningful review on appeal. *Id.* (remand not required when record is sufficient to support judgment). Consequently, this court cannot say that the trial court's failure to make the findings requested by Father is reversible error. Father's second and third points are denied.

Based on this court's disposition of the issue of child custody, and the interrelatedness of child custody and child support, the trial court is directed to reconsider the issue of child support on remand. *Buschardt v. Jones,* 998 S.W.2d 791, 802 (Mo. App.1999). *See also Sinclair v. Sinclair,* 837 S.W.2d 355, 360 (Mo.App.1992) ("When reversing one portion of a decree, sometimes it is appropriate to reverse other portions of the decree so that, on remand, the trial court can consider all necessary related portions."). Accordingly, the case is remanded to the trial court for further proceedings consistent with this opinion.

All concur.