Timothy M. WALTERS, Respondent,

v.

Regena WALTERS, Appellant.

No. WD 64633.

Missouri Court of Appeals,
Western District.

Nov. 1, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 20, 2005.

Application for Transfer Denied
Jan. 31, 2006.

James A. Rust, Richmond, MO, for appellant.

Kay Madden, Kansas City, MO, for respondent.

Before EDWIN H. SMITH, P.J., LOWENSTEIN and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

Regena Walters (Mother) appeals the trial court's judgment, holding Mother in civil contempt and ordering an abatement in child support from Tim Walters (Father) for Mother's violation of the Temporary Order of Visitation (temporary order) dated February 4, 2004, and the Judgment of Dissolution of Marriage (dissolution decree) dated July 23, 2004.[1] Mother raises three points on appeal. First, she argues the trial court erred because the judgment was against the weight of the evidence. Second, she contends that the court erred in abating child support because such abatement amounts to an impermissible fine. Third, Mother claims the trial court erred by not providing in its order how she could purge herself from the contempt and for abating Father's child support to rectify the trial court's imposition of two days in jail for her contempt.

This court affirms the trial court's judgment. The trial court did not abuse its discretion by holding Mother in civil contempt. Furthermore, the trial court did not abuse its discretion by ordering an abatement of child support because it has authority from section 452.340.7 to abate child support when a parent fails to provide legal custody or court ordered visitation. Finally, while the trial court may have erred when it failed to state a means of purging the two-day jail sentence, the issue is moot because Mother already served her sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married in August 1989 and separated in February 2001. They had three children: Ryan, 16, Mollie, 14, and Conner, 11. Father filed for divorce on January 24, 2003. The court entered a temporary order of visitation on February 4, 2003, providing Father with parenting time on alternating weekends beginning at 7:00 a.m. on Saturday to 9:00 p.m. on Sunday.[2] On April 1, 2004, the parties appeared in court and verbally stipulated to the terms and conditions of the dissolution decree, which left unchanged the alternating weekends schedule, but added from 3:00 p.m. on Monday to 9:00 a.m. on Tuesday to Father's parenting time. In addition, the children were to spend three to four weeks (depending on the year) in the summer with Father and alternating holidays. Mother and Father were to exchange custody at Hardee's restaurant on Noland Road, except on Tuesday mornings when Father must bring the children to Mother's home.

On June 15, 2004, Father filed a Motion to Enforce a Verbal Agreement, Motion for Compensatory Visitation and Motion for Attorney Fees, alleging that Mother had interfered with Father's visitation when she did not deliver the children for visitation on two separate weekends. Father requested compensatory visitation, but was denied by the court.

The parties' divorce became final on July 23, 2004. Both parents were desig-

1. Although the trial court did not enter the dissolution decree until July 23, 2004, the parties stipulated to its terms and conditions on April 1, 2004.

2. The temporary order further provided that Father have the following parenting time: February 4 and February 11, 2004, from 3:00 p.m. to 6:00 p.m. and March 30, 2004, which is Father's birthday. Also, the court ordered Father and the children to continue family counseling.

nated as joint legal custodians with Mother named as sole legal custodian. The court approved and adopted the parties' Parenting Plan.

Father brought contempt proceedings against Mother in July 2004, alleging that she failed to comply with the temporary order and dissolution decree. The court entered a Show Cause Order on July 13, 2004, and again on July 22, 2004. The court heard the matter on August 6, 2004, held Mother in civil contempt, sentenced Mother to two days in county jail, ordered Mother to pay Father's and the Guardian Ad Litem's attorney fees, and abated Father's child support obligation, effective from July 1, 2004, until visitation begins. At the hearing for contempt, the parties stipulated that Father had not received twenty-five days of parenting time since April 1, 2004. Additional facts are discussed as the opinion dictates.

## II. Standard of Review

"A trial court's judgment in a civil contempt proceeding will not be disturbed on appeal absent a clear abuse of discretion." *Timmons v. Timmons*, 139 S.W.3d 625, 628 (Mo.App.2004). This court will affirm the judgment unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## III. Legal Analysis

### A. Weight of the Evidence

An appellate court should set aside a judgment as "against the weight of the evidence" if it firmly believes that the judgment is wrong. *Miers v. Miers*, 53 S.W.3d 592, 595 (Mo.App.2001). Weight of the evidence refers to weight in probative value, not quantity or the amount of evidence. *Buschardt v. Jones*, 998 S.W.2d

791, 796 (Mo.App.1999). The weight of evidence is not determined by mathematics, but on its effect in inducing belief. *Id.* When conflicting evidence exists, the trial court has the discretion to determine the credibility of witnesses. *Love v. Love*, 75 S.W.3d 747, 754 (Mo.App.2002).

In the case at bar, the court found the mother "continuously and willfully failed and refused to make the children available for their parenting time with [Father]. Said failure is deliberate, intentional, and contumacious and constitutes contempt of this Court." Mother argues that the trial court erred in holding her in contempt of court because such a finding is against the weight of the evidence when the minor children, due to no fault of Mother's, refused to attend visitation with Father.

A party alleging contempt establishes a prima facie case for civil contempt when the party proves: (1) the contemnor's obligation to perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation. *Love* at 759 (citing *Lyons v. Sloop*, 40 S.W.3d 1, 10 (Mo.App.2001)). The alleged contemnor then has the burden of proving that person's failure to act was not due to her own intentional and contumacious conduct. *Id.* at 759–60.

Under the temporary order and the dissolution decree, which was stipulated to on April 1, 2004, Mother was obligated to deliver the children to Father for his parenting time, among other times, on alternating weekends, on Monday evenings and several weeks in the summer. Mother failed to meet her obligation when she failed to deliver the children on the weekends of May 22–23, June 5–6, and July 3–4, and when she retrieved the children three days early from the scheduled week-long visit in June. In addition, Mother admitted to refusing to communicate with Father,

and instead had Ryan call his father when Ryan and the children refused to attend visitation. The dissolution decree specifically requires that "[t]he parties shall communicate directly with each other and not use a child as a messenger." Significantly, Mother and Father stipulated at the contempt hearing that Father missed twenty-five days of visitation. The weight of the evidence shows that Father met his burden.

Mother argues that her conduct was not intentional or contumacious by failing to deliver the children for Father's parenting time. Instead, she argues, the failure resulted from the strong will of her children when they refused to visit. The trial court found that Mother failed to present sufficient evidence that she did not willfully and intentionally disobey the court's temporary order.

Here, the evidence shows that Mother's failure to deliver the children was intentional and contumacious. Mother admitted to not delivering the children to Father for three separate scheduled weekend visits—in clear violation of the temporary order and stipulated dissolution decree. In fact, Mother admits in her brief that Father failed to receive all of his parenting time.[3] Similarly, Mother called at 6:00 a.m. on Saturday morning before the children were due to arrive at Father's house at 7:00 a.m., and changed plans, despite knowing that she was going to have to make the change several days in advance. Because Father works at a farmer's market on Saturday mornings, he was unable to accommodate Mother's change with such late notice. As a result, Father could not meet the children for their scheduled visit.

Mother argues that the children refused to go. However, the evidence relied on by the finder of fact shows that Mother implicitly and explicitly encouraged the children's disrespect of their father. The record is plentiful with instances of Mother's emasculation of Father's authority with the children and his attempts to discipline them. The children vandalized Father's house on two separate occasions in response to the Father's removal of video game, computer, and television privileges. The children tore the bedding from the bed, wrote the words "Rest in Peace," "Red Rum," "I hate this place," and "I miss my dogs" on the walls of the bedroom. The children damaged the window screens and a table in the bedroom and destroyed board games. After learning of such destruction, Mother acknowledged that she did not discipline the children, essentially claiming that disciplining the children for the vandalism was not her responsibility because it "was not [her] house." Also, she did not encourage the children to apologize to Father for the vandalism.

Nor did Mother encourage an apology from Conner to his father when Conner, the youngest, stole $10 from Father. Instead, Mother returned it to Father via certified mail. Furthermore, when the children testified at the contempt hearing, they referred to their father by his first name.

In a further effort to undermine Father's authority, Mother purchased the children portable C.D. players in response to an incident wherein Ryan and Father had an argument when Ryan turned Father's car radio to an unreasonable volume while Father was driving on Interstate 70. Ryan refused to turn the volume down. Father testified that Ryan "glare[d] at me

**3.** Mother states in her brief, "Admittedly the man [Father] did not get all of his visitation up to the point the children refused to go, [sic] she was punished for that alleged contempt of the temporary order."

and [held] his hand over [the radio], just waiting for me to smack his hand." Ryan's conduct necessitated that Father remove the radio fuse in the vehicle when the children rode with him.

In conclusion, the weight of the evidence indicates the trial court did not err by holding Mother in contempt of court. The record shows Mother failed to meet her obligation to deliver the children for Father's scheduled parenting time and that Mother failed to meet her burden to prove that her conduct was not willful and intentional. Mother's brief repeatedly states that the children, and not Mother, are to blame for not visiting their father.[4] Indeed, the record shows that the children refused to go to Father's for visitation. However, Mother's implicit encouragement to disrespect Father precedes the children's disrespect. As such, the trial court did not err in holding Mother in contempt of court. Point denied.

## B.  Child Support Abatement

Mother argues that the trial court erred when it ordered Father to abate child support because such abatement constitutes a fine. Mother looks to section 452.365[5] to argue that the court erred when it abated Father's child support obligation. Section 452.365 provides in relevant part that the obligation to make child support payments is not automatically suspended when the other party violates a provision of the decree or temporary order.

Section 452.340.7 provides that a court may abate past or future obligation of child support if it finds that a parent has, without good cause, failed to provide visitation or physical or legal custody. Contrary to Mother's suggestion, section 452.340.7 does not require a party to request abatement. Rather, section 452.340.7 requires a party to request payment of attorney's fees.[6]

■ Mother's suggestion that section 452.365 somehow "trumps" section 452.340 is incorrect. A careful reading of section 452.365 shows a preclusion of *self-executing* abatement. Section 452.340 authorizes a court to order abatement of any past or

4.  Mother's brief states "Behind the surface of this case is a fact of importance, these kids were raised in an abusive alcoholic household, [Father] was the abuser, [sic] he sexually abused their sister (an older child named M.W. had been adopted to the parties and was emancipated [sic] she was inadvertently omitted from the court's decree), these kids knew this, [sic] they had been abused or seen their brother abused by [Father].... These children were the victims of abuse, but because [Father] had allegedly quit drinking, and because he was never convicted of sexual abuse, these kids had to go see him." Mother provides absolutely no citation to the record for this information.  S.Ct. Rule 84.04(i) (2005) ("All statements of fact and argument shall have *specific page references* to the legal file or the transcript.")(emphasis added).

5.  All references are to Mo.Rev.Stat. (2000).

6.  The last sentence of section 452.340.7 provides, "The court shall also award, if re-

*quested* and for good cause shown, reasonable expenses, *attorney's fees* and court costs incurred by the prevailing party." (emphasis added).  Mother did not challenge the issue of Father's request or lack of request of payment of attorney's fees.  Her point relied on stated, "The trial court erred in holding [Mother] in contempt of court and punishing her by abating the future child support because the court has entered an order which is in effect a fine and in that there was no substantial evidence that a fine in the amount of $11,208 per year was substantially related to the injury suffered by [Father]." An argument not set out in the point relied on but merely referred to in the argument portion of the brief does not comply with the requirements of Mo. Sup.Ct. R. 84.04(d) and the point is considered abandoned in the appellate court.  *Brizendine v. Conrad,* 71 S.W.3d 587, 593 (Mo. banc 2002).

future obligation of child support, in whole or in part, upon the showing that a parent failed to provide visitation. Therefore, the trial court had statutory authority to abate Father's child support obligation upon finding that Mother was in contempt of the temporary order and dissolution decree, and the judgment awarding Father abatement of his child support obligation did not constitute a "fine."

Mother next argues that Father failed to prove that the abatement was substantially related to the injury suffered by Father, and, therefore, the trial court erred by abating the child support. This argument has no merit. First, Mother bases this argument on the premise that the child support abatement is a fine. A demonstration of how the abatement is substantially related to the injury is required if indeed a fine is imposed. *See Wilson v. Sullivan*, 922 S.W.2d 835, 838 (Mo.App. 1996). This court has already determined that the abatement was properly authorized by section 452.340.7 and is not a fine. Second, Mother cites *Wilson v. Sullivan* to support this requirement. This case is easily distinguished. In *Wilson*, the trial court assessed the mother a lump sum $10,000 fine for her civil contempt. *Id.* at 838. Notably, *Wilson* did not involve abatement of child support. *See id.* The Eastern District deemed the lump sum fine to be impermissible because the father neither pled nor presented evidence of damages related to the contempt and the contempt related to a dissolution decree, which was later rendered unenforceable. *Id.* at 839. Point II denied.

## C. Purging Provision

▮▮▮ Mother argues in her final point that the trial court erred when it failed to provide in its Judgment of Contempt and Order of Commitment a means of purging Mother from the contempt order. Without the benefit of a citation, Mother encourages this court to reverse the trial court's award of child support abatement as a remedy for her improperly imposed jail time. Implicit in this argument is Mother's recognition that the two-day jail sentence, if improper, is moot. The trial court characterized Mother's contempt as civil. Without making the determination, because the issue is moot as analyzed below, this court notes that the two-day jail sentence imposed by the trial court is reminiscent of criminal contempt.[7] A criminal contempt conviction is not reviewable by this court. *Teefey v. Teefey*, 533 S.W.2d 563, 565 (Mo. banc 1976).

▮▮▮ In order for a contemnor to be incarcerated for civil contempt, the contempt judgment and commitment order must contain facts and circumstances upon which the contemnor was so adjudged. *Simmons v. Megerman*, 742 S.W.2d 202, 205 (Mo.App.1987). "A civil contempt is not fully adjudged unless the order of commitment contains a recital of the particular facts and circumstances which constitute the contempt and a declaration of the conditions to be met to purge the contempt and so be free of the commitment." *Id.* Neither the judgment nor the commitment order provided any means to purge with

7. Contempt is classified as civil or criminal with each class having two subcategories of direct or indirect. *State ex. rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994). Civil contempt is intended to benefit a party for whom an order, judgment, or decree was entered. *Id.* Its purpose is to coerce compliance with the relief granted. *Id.* Crim-

inal contempt, on the other hand, is punitive in nature and acts to protect, preserve, and vindicate the authority and dignity of the judicial system and to deter future defiance. *Id.* The distinction between criminal and civil contempt is reflected in the content of the judgment, whether the remedy is coercive or punitive. *Id.*

respect to the two-day jail sentence.[8] While this is problematic, the issue is moot.

 The mootness of a controversy is a threshold question in any appellate review. *Belton v. Moore*, 112 S.W.3d 1, 5 (Mo.App.2003). Because mootness implicates the justiciability of a case, the appellate court reviews for mootness *sua sponte. Id.* When an event occurs that makes a decision on appeal unnecessary or makes it impossible for the appellate court to grant effectual relief, the appeal is moot and generally should be dismissed. *Id.* at 5–6.

Mother already served her two-day sentence in the Lafayette County Department of Corrections, which began immediately after the contempt proceeding ended. This court cannot now grant any effectual relief as Mother does not remain in jail. The law provides a mechanism to challenge an unlawful confinement in the form of a writ of habeas corpus. Mo.Rev. Stat. § 532.010 (2000); *State ex rel. Tannenbaum v. Clark*, 838 S.W.2d 26, 28 (Mo.App.1992). Instead, Mother chose to serve her sentence. Therefore, Point III is moot.

## VI. Conclusion

In light of the above analysis, this court affirms the trial court's judgment.

All concur.

---

8. The judgment did provide a means to purge the child support abatement, when it stated that the abatement "shall remain abated in full, until such time as [Father's] parenting time resumes."