**Kendra M. REAM–NELSON, Appellant,**

v.

**Joshua NELSON, Respondent.**

**No. WD 71811.**

Missouri Court of Appeals,
Western District.

Nov. 16, 2010.

---

Craig D. Ritchie, for Appellant.

Ryan G. Wilson, for Respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, ALOK AHUJA, Judge and KAREN KING MITCHELL, Judge.

JOSEPH M. ELLIS, Judge.

Kendra Ream–Nelson ("Mother") appeals from a judgment entered in the Circuit Court of Buchanan County denying her motion to modify the custody provisions of the decree dissolving her marriage to Joshua Nelson ("Father"). Mother also appeals from the circuit court's denial of her motion to have Father held in contempt for failure to comply with provisions of the dissolution decree.

Prior to dissolution, Mother and Father were married for sixteen years. Two children were born of the marriage: Kody, born March 24, 1993, and Josette, born January 25, 1998.

After a physical altercation with Mother, in July 2008, Father pleaded guilty to a domestic assault charge and was placed on probation for two years subject to the jurisdiction of a "Domestic Violence Court." On November 20, 2008, the Circuit Court of Buchanan County entered its judgment dissolving the marriage between Mother and Father. The court awarded joint legal custody to both parties. Mother was awarded sole physical custody of the children, and Father was granted weekly visitation rights.

On February 24, 2009, Father filed a motion to modify the decree of dissolution and for contempt alleging that Mother was failing to comply with the provisions of the dissolution decree. That motion was subsequently dismissed by Father prior to hearing. On April 10, 2009, Mother filed her answer and cross-motion to modify custody and visitation and for contempt. Mother claimed that a substantial change in circumstances had occurred that warranted awarding her full legal custody over the children and requested that all of Father's visitation be supervised, asserting twenty-four different claims of misconduct against Father. She also claimed that Father was in contempt for failing to utilize his best efforts to refinance a home that had been owned by the couple in order to remove her name from the mortgage and had failed to make some of the monthly payments on her 2008 Toyota Forerunner.

After conducting an evidentiary hearing on Mother's motion on October 1, 2009, the circuit court entered its judgment finding that the allegations in Mother's motion "were wholly unsupported at Hearing by competent and substantial evidence." The court found that Mother had failed to demonstrate a change in the circumstances of Mother or the children that would allow for modification of custody. The court further found that Father's inability to refinance the house or make the car payment was not willful and was due to Father's financial and business difficulties, and was, therefore, not contemptuous. Mother brings two points on appeal.[1]

In her first point, Mother claims that the trial court's erroneously found that Mother had failed to demonstrate a sufficient change had occurred in the circumstances of herself or the children to warrant a change in legal custody. Mother argues that the weight of the evidence established that she and Father are unable to communicate.

"As in other judge-tried cases, our standard of review in a modification of custody proceeding is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Durbin v. Durbin*, 226 S.W.3d 876, 878 (Mo.App. W.D.2007) (internal quotation omitted). "The trial court's ruling will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it declares or applies the law incorrectly." *Id.* (internal quotation omitted). "In reviewing the trial court's judgment, we must view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment and disregard all evidence and inferences to the con-

1. Father has elected not to file a brief on appeal. "There is no penalty for a respondent failing to file a brief, however, this Court is forced to adjudicate Mother's claim of error without the benefit of whatever argument Father might have raised." *Basham v. Williams*, 239 S.W.3d 717, 721 n. 3 (Mo.App. S.D.2007).

trary." *Hamer v. Nicholas*, 186 S.W.3d 884, 886 (Mo.App. W.D.2006).

▆▆▆ "We give greater deference to the trial court in child custody cases than in other types of cases because the trial court is in the best position to judge the credibility of the parties, their sincerity, character, and other intangibles which may not be revealed by the record." *Durbin*, 226 S.W.3d at 879 (internal quotations omitted). "The judgment must be affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incorrect." *Hamer*, 186 S.W.3d at 886 (internal quotation omitted). "We exercise extreme caution in considering whether a judgment should be set aside on the grounds that it is against the weight of the evidence, and will do so only upon a firm belief that the judgment was wrong." *Ronquille v. Ronquille*, 263 S.W.3d 770, 774 (Mo.App. W.D.2008) (internal quotation omitted).

▆▆▆ " 'Under § 452.410.1, a court may not modify a prior custody decree unless it finds, on the basis of facts which have arisen subsequent to [that] decree, that (1) a change has occurred in the circumstances of the child or his custodian and (2) a modification of custody is in the best interests of the child.' " [2] *Spire v. Adwell*, 36 S.W.3d 28, 31 (Mo.App. W.D. 2000) (quoting *Mobley v. Phillips*, 942 S.W.2d 399, 400–01 (Mo.App. W.D.1997)). "A motion to change from joint custody to sole custody requires a showing that the change in circumstances is substantial." *Hightower v. Myers*, 304 S.W.3d 727, 734 n. 6 (Mo. banc 2010). "[T]he parent re-

questing the change of custody has the burden of proving the change in circumstances warranting custody modification." *Bather v. Bather*, 170 S.W.3d 487, 493 (Mo.App. W.D.2005). Thus, in ruling on a motion to modify from joint legal to sole legal custody, the trial court must first determine whether the evidence establishes that a substantial change has occurred in circumstances of the child or the child's custodian; and, if so, it must then consider whether the best interests of the child would be served by modifying custody. *Fortner v. Fortner*, 166 S.W.3d 615, 618 (Mo.App. W.D.2005).

Prior to the entry of the original dissolution decree, after a physical altercation with Mother, in July 2008, Father pleaded guilty to a domestic assault charge and was placed on probation for two years subject to the jurisdiction of a "Domestic Violence Court." The details of that incident were not placed in evidence before the circuit court in the dissolution or modification proceedings. According to both Father and Mother's testimony in the evidentiary hearing, under the initial terms of his probation, Father was prohibited from communicating with Mother about anything other than the children. After Mother felt that Father was calling about the children too frequently, Father agreed to be further limited to no more than two telephone calls per day about the children. Subsequently, Father sent a letter to Mother setting forth the things that he felt were positive about their marriage. As a result of that letter and Father calling her three times in a day on one occasion, Mother pursued and obtained a full no

2. Section 452.410.1, governing the modification of custody, provides, in relevant part: [T]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and its finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

contact order against Father in the domestic violence court.

Following the evidentiary hearing on her motion to modify custody, the circuit court found:

It goes without saying that the conditions of probation to which [Father] is subject in a "Domestic Violence Court" case curtail his ability to contact [Mother] for any reason. However, under this Court's JUDGMENT, not only are both parents encouraged to honestly and openly communicate with one another regarding financial matters related to the dissolution but also as to areas dealing with complying with the Joint Custody Arrangement.

[Mother] has used this prohibition against communication by [Father] as both a sword and a shield for her to refrain from her duty to communicate with [Father] under the JUDGMENT. [Mother]'s generic, emotional account of incidences of physical and mental abuse by [Father] consisted of vague and non-specific conclusions without bolster by articulated facts save for such conduct as [Father] writing [Mother] a note in which he informed her he wished to think about the good things which were part of their marriage and exceeding a permissible two (2) telephone calls per day by one telephoning her three (3) times, both of which constituted technical violations of his probation conditions and resulted in punitive actions against [Father] by the "Domestic Violence Court." While this Court was never benefited with the details of the occurrence which lead to [Father]'s term of probation, such had occurred prior to the time of the dissolution of the marriage and, this Court must assume, was

considered at the time [Mother] and [Father] entered into their joint custodial arrangement.

Notwithstanding, the conditions of probation in the aforementioned case, it would appear that [Mother], not [Father] may be the party in violation of the provisions of the custody arrangement provided in the JUDGMENT; an arrangement which was agreed upon by the parties and, as provided for by Sec. 452.375.6 RSMo., approved by this Court as being in the best interests of the children less than one (1) year ago.

* * *

This Court is unable to detect the presence of a change of circumstances of the children or [Mother] such as meets the burden established by Sec. 452.410.1 RSMo., necessitating the modification she requests to serve the best interests of the children.

Section 452.375.1(2) defines "joint legal custody" as a situation in which "the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority." *Sutton v. Sutton,* 233 S.W.3d 786, 790 (Mo. App. E.D.2007). The uncontroverted testimony of both Father and Mother established that Father and Mother did not have any communication from the end of February 2009 until the evidentiary hearing on October 1, 2009. Regardless of who was responsible for that breakdown in communication,[3] it was a total communication breakdown nonetheless. No joint par-

**3.** The welfare of the children is the primary consideration in making a determination related to custody, and "custody should not be

used to reward or punish either party." *In re Marriage of Kroeger–Eberhart v. Eberhart,* 254 S.W.3d 38, 48 (Mo.App. E.D.2007).

enting had occurred in at least seven months. While Father testified to his belief that he and Mother had reached a point where they would be able to effectively communicate, the fact that communication had not occurred in such a long period and that there continued to be no communication between the parents was indeed a significant change in the circumstances that warranted consideration of whether a modification in the custody decree was in the best interests of the children. "The parties' inability to communicate, cooperate, and make shared decisions concerning their children's welfare makes joint legal custody inappropriate, and a breakdown of parental communication and cooperation is sufficient, in and of itself, to constitute a change in circumstances which can afford the basis for modifying a prior decree." *Id.* (internal quotation omitted); *see also Margolis v. Steinberg*, 242 S.W.3d 394, 398 (Mo.App. E.D.2007); *Hamer*, 186 S.W.3d at 887; *McCauley v. Schenkel*, 977 S.W.2d 45, 50 (Mo.App. E.D.1998).

Accordingly, the judgment is reversed, and the cause is remanded to the circuit court to consider whether a change of custody would be in the children's best interests, giving due consideration to the public policy stated in § 452.375.4 and the eight statutory factors listed in § 452.375.2. "In that regard, it is for the trial court to decide, in the exercise of its discretion, whether to reopen the record and receive additional evidence on remand." *Hamer*, 186 S.W.3d at 889 (internal quotation omitted).

■■■ In her second point, Mother claims that the trial court erred in denying her motion for contempt against Father. Mother argues that the circuit court's finding that Father's inability to satisfy his obligation to have her name removed from the mortgage was not willful or contemptuous is against the weight of the evidence.

■■■ As in any court tried matter, in a civil contempt proceeding, "[t]his court will affirm the judgment unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law." *Walters v. Walters*, 181 S.W.3d 135, 138 (Mo.App. W.D.2005). "A trial court's judgment in a civil contempt proceeding will not be disturbed on appeal absent a clear abuse of discretion." *Id.* (internal quotation omitted). "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Stuart v. Ford*, 292 S.W.3d 508, 513 (Mo. App. S.D.2009) (internal quotation omitted). "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.* (internal quotation omitted).

■■■ "A party alleging contempt establishes a prima facie case for civil contempt when the party proves: (1) the contemnor's obligation to perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation." *Walters*, 181 S.W.3d at 138. "The alleged contemnor then has the burden of proving that person's failure to act was not due to her own intentional and contumacious conduct." *Id.*

Father readily acknowledged during the hearing his obligation under the dissolution decree to refinance the house to have Mother's name removed from the mortgage and his failure to meet that obligation. He also acknowledged not having been able to pay off the debt on the marital house and to having missed payments on Mother's car. Accordingly, the burden

shifted to Father to demonstrate that his failure to perform was not due to his own intentional and contumacious conduct.

■ "Whether or not [*sic*] Father's conduct was intentional and contumacious is a fact-driven inquiry." *Basham v. Williams*, 239 S.W.3d 717, 727 (Mo.App. S.D.2007). Father stated at the hearing that financial problems and business difficulties had made it impossible for him to comply with all of the provisions of the decree at once. Father testified that he had IRS tax liens against him totaling approximately $200,000.00, that business for his business was down eighty percent, that the business no longer had any employees, that he was running the business out of his home, and that he was barely able to make the payments to keep the business running. He testified that his debt to income ratio was too high to refinance after the decree was entered and that the IRS had demanded a payment of $12,400.00 to subordinate their interest in the property. Father further testified that he had placed the house up for sale and that, if it didn't sell, he would take whatever steps were necessary to resolve the situation within sixty days, possibly pursuing a deed in lieu of foreclosure or a short sale. The trial court found Father's testimony credible and that Father's failure to comply with the provisions of the dissolution decree was not willful or intentional.

Mother claims that Father's satisfaction of other debts assigned to him, including the $20,000 equalization payment owed to her under the judgment and his payment of other marital and nonmarital debts, demonstrates his behavior was intentional and contumacious because he could have satisfied his obligations related to the house and her car instead. She cites cases in which a trial court entered a contempt judgment where the spouse had options available to them that would allow them to satisfy the judgment.

The trial court accepted as credible Father's testimony that his debt to income ratio as well as the IRS subrogation prevented Father from refinancing the home. Accordingly, the trial court was entitled to find that the steps taken by Father were all reasonable and necessary for him to refinance the home and settle the marital debt thereupon. The trial court found that, due to his debt and financial problems, Father lacked the wherewithal to satisfy his obligations related to the house and car contained in the dissolution decree.

■ We defer to the trial court's credibility determinations and its weighing of the evidence. *Stuart*, 292 S.W.3d at 514. Viewing the evidence in accordance with our standard of review, we cannot conclude that the trial court's decision was against the weight of the evidence or that the decision is otherwise "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 513 (internal quotation omitted). Point denied.

As noted in our treatment of Appellant's first point, the trial court erred in finding that a substantial change in the circumstances of the children or the custodial spouse had not occurred. Accordingly, the judgment is reversed, and the cause is remanded to the circuit court to consider whether a change of custody would be in the children's best interests, giving due consideration to the public policy stated in § 452.375.4 and the eight statutory factors listed in § 452.375.2. "In that regard, it is for the trial court to decide, in the exercise of its discretion, whether to reopen the record and receive additional evidence on

remand." *Hamer*, 186 S.W.3d at 889 (internal quotation omitted).

All concur.