Donna Lynn HAMER, Respondent,

v.

Steven Todd NICHOLAS, Appellant.

No. WD 65183.

Missouri Court of Appeals,
Western District.

March 28, 2006.

Craig D. Ritchie, Jane Carmichael Sachs, Co–Counsel, St. Joseph, MO, for appellant.

Donna Lynn Hamer, Cameron, MO, pro se.

Before HAROLD L. LOWENSTEIN, Presiding Judge, JOSEPH M. ELLIS, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

Stephen Nicholas ("Father") appeals from a judgment entered in the Circuit Court of Clinton County denying his motion to modify its prior decree granting joint physical and legal custody of his child, Danielle, to Father and the child's mother, Donna Hamer ("Mother"). In denying Father's request that he be granted sole physical custody of Danielle, the circuit court found that there had not been a substantial change in the circumstances of the child or either custodial parent to warrant considering modification of custody. Because this finding is against the weight of the evidence, the cause must be reversed and remanded to the circuit court for further proceedings.

Father and Mother were married January 17, 1997. The couple's only child, Danielle, was born on May 15, 1998. Mother subsequently filed a petition for dissolution of marriage, and on December 4, 1998, the circuit court entered its judgment dissolving the marriage. The court awarded Father and Mother joint legal custody over Danielle, but awarded Mother "primary physical custody" with Father being granted visitation.

On December 13, 2001, the circuit court granted a motion to modify custody filed by Father and awarded joint legal and physical custody of Danielle to Father and

Mother. The parenting plan adopted by the court called for Danielle to spend alternating one-week periods with each parent.[1]

On March 24, 2004, Father filed his Motion to Modify Judgment of Modification in which he asked the court to award him sole physical custody of Danielle. Father's motion was heard on August 3 and November 15, 2004.[2]

On January 31, 2005, the circuit court entered its judgment denying Father's motion. In so doing, the court found that Father "has failed to prove that there has been a substantial and continuing change in the circumstances of the parties and the minor child such that a modification of the prior Judgment would be required for the best interest of the minor child."

In his sole point on appeal from the circuit court's judgment, Father contends that the court erred in finding that a significant change had not occurred in the circumstances of the child. Father further contends that the record establishes that modification was necessary to protect the best interests of the child.

■■■ "Our review of a judgment modifying child custody is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976)." *Johnson v. Lewis,* 12 S.W.3d 379, 382 (Mo. App. W.D.2000). "We will affirm the judgment so long as it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Id.* In reviewing the trial court's judgment, we must view the evidence and all reasonable inferences drawn therefrom in the light most

favorable to the trial court's judgment and disregard all evidence and inferences to the contrary. *St. Lawrence v. St. Lawrence,* 109 S.W.3d 225, 226–27 (Mo.App. E.D.2003).

■■■ "We give greater deference to the trial court in child custody cases than in other types of cases because the trial court is in the best position to judge the credibility of the parties, their sincerity, character, and other intangibles which may not be revealed by the record." *In re Marriage of Parmenter,* 81 S.W.3d 234, 242 (Mo.App. S.D.2002) (internal quotation omitted). " 'This court will not disturb the trial court's determination of custody unless it is manifestly erroneous and the welfare of the children demands a different result.' " *Spire v. Adwell,* 36 S.W.3d 28, 31 (Mo.App. W.D.2000) (quoting *Hicks v. Hicks,* 969 S.W.2d 840, 843 (Mo.App. W.D.1998)). " 'The judgment must be affirmed under any reasonable theory supported by the evidence and should be set aside only upon a firm belief that the trial court's judgment was incorrect.' " *Wallace v. Chapman,* 64 S.W.3d 853, 858 (Mo. App. W.D.2002) (quoting *Baumgart v. Baumgart,* 944 S.W.2d 572, 575 (Mo.App. W.D.1997)).

■■■ " 'Under § 452.410.1, a court may not modify a prior custody decree unless it finds, on the basis of facts which have arisen subsequent to [that] decree, that (1) a change has occurred in the circumstances of the child or his custodian and (2) a modification of custody is in the best interests of the child.' "[3] *Spire,* 36

1. The party not having custody in any given week was afforded a three-hour visitation period each Thursday, and holidays were divided between the parties.

2. Mother appeared *pro se* in those proceedings and continues to be unrepresented on appeal.

3. Section 452.410.1, governing the modification of custody, provides, in relevant part:
   [T]he court shall not modify a prior custody decree unless it has jurisdiction under the provisions of section 452.450 and its finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior

S.W.3d at 31 (quoting *Mobley v. Phillips*, 942 S.W.2d 399, 400–01 (Mo.App. W.D. 1997)). The Missouri Supreme Court has determined that the change in circumstances required by this statute must be "substantial" in nature. *Searcy v. Seedorff*, 8 S.W.3d 113, 117 (Mo. banc 1999). "[T]he parent requesting the change of custody has the burden of proving the change in circumstances warranting custody modification." *Bather v. Bather*, 170 S.W.3d 487, 493 (Mo.App. W.D.2005). Thus, in ruling on a motion to modify custody, the trial court must first determine whether the evidence establishes that a substantial change has occurred in circumstances of the child or the child's custodian and, if so, it must then consider whether the best interests of the child would be served by modifying custody. *Fortner v. Fortner*, 166 S.W.3d 615, 618 (Mo.App. W.D.2005).

"In making its determination of best interest, section 452.375 requires that the court consider the public policy stated in section 452.375.4 and the eight statutory factors included in section 452.375.2." *Cerutti v. Cerutti*, 169 S.W.3d 113, 115 (Mo.App. W.D.2005). "Section 452.375 further requires in subsection 6 that, when child custody is contested, written findings be made in the judgment based on the public policy and the eight factors." *Id.* "Section 452.375.6 does not require written findings for all eight statutory factors, but it does require written findings of all relevant factors be included in the opinion." *Id.* (emphasis omitted).

In the case at bar, the trial court found that there was no substantial change in the circumstances of the child or either of the custodial parents and did not consider or make findings on the statutory factors contained in § 452.375.2. Thus, its judgment rested entirely upon a finding that no substantial change had occurred in the circumstances of the child or either custodial parent.[4] Our inquiry is, therefore, limited to whether the circuit court properly determined that Father failed to establish that a substantial change had occurred in the circumstances of Danielle or one of her custodial parents.[5]

Having thoroughly reviewed the record, we are left with a firm and definite impression that the circuit court's finding that no substantial change occurred in the circumstances of the child or either custodial parent is against the weight of the evidence. While the circuit court was clearly entitled to disregard as uncredible testimony by Father and Danielle's therapist that Danielle had made certain allegations about Mother's husband,[6] the weight of the uncontroverted evidence offered by both Father and Mother at trial sufficiently established a substantial change in the circumstances of Danielle and Mother to warrant consideration of whether a change of

---

decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child.

**4.** "When parents have joint physical custody, each parent is a custodian within the meaning of the statute." *Timmerman v. Timmerman*, 139 S.W.3d 230, 236 (Mo.App. W.D. banc 2004).

**5.** To the extent Father challenges the circuit court's determination of the best interests of the child, as no findings were made as to the

child's best interests, his claims are not well taken.

**6.** Father and Danielle's therapist testified that Danielle had reported being repeatedly spanked and demeaned by Mother's husband for wetting her bed and failing to eat her meals, being threatened by Mother's husband with a handgun, and generally being fearful of what Mother's husband might do to herself or her mother. Mother presented evidence refuting those allegations.

custody would be in Danielle's best interests.

The evidence presented by both parents reflected that, since the circuit court's joint custody determination in December 2001, Danielle had developed a significant bedwetting problem. Furthermore, both parents acknowledged that they have been unable to agree about how to address this problem and were taking different approaches in each of their homes. Both parents also acknowledged that Danielle had been having nightmares.

The evidence reflects that Father took Danielle to see a therapist without the knowledge or consent of Mother and that Danielle continued to see the therapist for approximately one year before Mother found out. The testimony of both Mother and Father reflected an ongoing dispute between them over whether Danielle should continue to receive therapy.

■■■ Mother and Father also both offered testimony indicating that they were generally having difficulty communicating with each other and making decisions regarding Danielle. " 'In a joint custody situation, breakdown of parental communication and cooperation is sufficient, in and of itself, to constitute a change in circumstances.' " *Timmerman v. Timmerman*, 139 S.W.3d 230, 237 (Mo.App. W.D.2004) (quoting *Hollins v. Hollins*, 13 S.W.3d 669, 672 (Mo.App. E.D.2000)).

In addition, the uncontroverted evidence established several changes in the circumstances of Mother since December 2001.

Mother's youngest child, three-year-old Aaron, who also lives in Mother's home, has been diagnosed with several significant mental and physical developmental problems, including a brain malformation, frequent seizures, very low muscle tone, and the need for a brace to support his neck.[7] Mother characterized Aaron as a "special needs child" that is physically and emotionally needy and requires a great deal of attention. The evidence further established that Mother was fired from her job in the Winston School District and had recently obtained a new job at Missouri Western State College at a lower salary. In addition, Mother's husband suffers from diabetes and is no longer able to work, and her husband's twenty-two-year-old son had moved in with them. Thus, several changes undisputedly occurred in Mother's household since the previous decree.

Finally, we note that both Mother and Father testified that the status quo was no longer working and that Danielle needed a more consistent home. Mother testified that the current custody arrangement was not working and that Danielle would benefit, now that she was six-years-old and starting school,[8] from the stability of being primarily in one home. Father offered similar testimony.

Taken as a whole, the uncontroverted evidence clearly reflects that substantial changes had occurred in the circumstances of Danielle and Mother sufficient to warrant consideration by the circuit court of

7. Kim Neal, a state employee with the First Steps program, testified that Aaron was born with a brain malformation, has frequent seizures, has very low muscle tone, and requires a brace to support his neck. Neal indicated that a specialist from Childrens' Mercy Hospital had stated that the child was not expected to ever sit up, interact with people, or bear weight, but, despite those predictions, Aaron had made significant progress toward those goals. Neal testified that the challenge of dealing with a child with these sorts of mental and physical handicaps would tax any family.

8. We note that "the claim that a child was about to commence school has never been a ground to modify custody in and of itself." *In re Marriage of Hoskins*, 164 S.W.3d 188, 194 (Mo.App. S.D.2005).

whether a change in custody would be in Danielle's best interests. "Even if no single factor discussed above established changed circumstances, the combination of the factors clearly does." *Johnson v. Johnson,* 758 S.W.2d 721, 725 (Mo.App. W.D.1988). The circuit court's finding that a substantial change had not occurred in the circumstances of Danielle or either of her custodial parents sufficient to warrant consideration of whether a change in custody would be in the child's best interests is manifestly erroneous, and the welfare of the child demands that the cause be remanded for consideration of whether a change in custody is in her best interests.

The judgment of the circuit court is reversed, and the cause is remanded to that court to consider whether a change of custody would be in Danielle's best interests, giving due consideration to the public policy stated in section 452.375.4 and the eight statutory factors listed in section 452.375.2, and for such other proceedings as are not inconsistent with this opinion. In that regard, "[i]t is for the trial court to decide, in the exercise of its discretion, whether to reopen the record and receive additional evidence on remand." *In re Marriage of Hoff,* 134 S.W.3d 116, 118 (Mo.App. S.D.2004).

All concur.