Gordon H. AUBUCHON, Respondent,

v.

Kimberley H. HALE, Appellant.

No. ED 97239.

Missouri Court of Appeals, Eastern District, Division Three.

June 26, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 7, 2012.

Application for Transfer Denied Dec. 18, 2012.

Francis Eugene Pennington, Pennington Shea, L.C., Francis Eugene Pennington, Laura Ann Shea, Co–Counsel, St. Louis, MO, for appellant.

Erin R. Griebel, Rosenblum, Schwartz, Rogers & Glass, P.C., St. Louis, MO, Patrick G. Aubuchon, Acting Pro Se, Union, MO, for respondent.

## OPINION

MARY K. HOFF, Judge.

Kimberley H. Hale (Mother) appeals from the judgment denying her verified motion to modify, seeking sole physical and legal custody of M.A. and H.A., and denying her request for relocation. We reverse and remand.

### Factual and Procedural Background

On September 3, 2009, the trial court entered its judgment of dissolution (September 2009 Judgment) dissolving the marriage of Mother and Gordon H. Aubuchon (Father). The judgment awarded the parties joint physical and legal custody of the parties' adopted daughters, M.A. and H.A. The judgment provided that the parties alternate custody every week and on various holidays and have two uninterrupted weeks of visitation during the summer. The judgment designated the address of Father as the address of the children for mailing and educational purposes. Father was ordered to pay to Mother $920 per month in child support for both children. The judgment provided that Father shall maintain health, dental, and vision insurance coverage for the children and pay seventy-percent of all noncovered health care expenses of the children.

On November 24, 2009, Joy Yang (Yang), Father's then girlfriend, reported to police and gave a statement about inappropriate behavior she had witnessed between Father and M.A. On November 25, 2009, the trial court entered a temporary restraining order against Father based on Yang's disclosures. On February 24, 2010, Father was indicted in St. Louis City with two counts of statutory sodomy against M.A. On February 17, 2011, following a ten-day jury trial, Father was acquitted of all criminal charges in *State of Missouri v. Gordon Aubuchon*, Cause No. 1022–CR00686. Eight days later, charges were filed in Jefferson County, Illinois, relating

to the same incident. Those charges were dismissed.

On May 28, 2010, Mother filed a Verified Motion to Modify Judgment of Dissolution of Marriage, seeking sole physical and legal custody of the parties' two minor children and relocation to Cypress, Texas.[1] On September 10, 2010, Father's brother and sister-in-law, as third-party intervenors, moved to modify the prior judgment and sought third-party custody of the children.

On July 21, 2011, following a hearing, the trial court denied Mother's motion to modify the former custody agreement and the relocation request. The trial court found that "[a]bsent allegations of abuse, [Mother] has failed to provide evidentiary support for a modification of the permanent custodial arrangement." The parties were ordered to participate in Therapeutic Supervised Visitation to normalize relations between the children and Father in view of limited contact between Father and the children since November 2009 when a temporary restraining order and criminal charges were filed against Father for sexual abuse of M.A. as well as the attendant bond conditions imposed from February 2010 through early 2011. The trial court ordered that the normalization process continue until released by the assigned counselor, at which point the prior parenting plan, as contained in the September 2009 Judgment, would be in full force and effect. The trial court suggested that in the event the "normalization" process failed, "the only recourse of the parties [might] be to return to Court with a Motion to Modify." The trial court also denied the third-party intervenor's motion. Mother now appeals.

*Standard of Review*

Our review is limited to a determination of whether the trial court's judgment is supported by substantial evidence, whether it is against the weight of the evidence, or whether the trial court erroneously declared or applied the law. *Smith v. Smith*, 75 S.W.3d 815, 819 (Mo.App. W.D.2002); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In assessing the sufficiency of the evidence in a case modifying custody, we will examine the evidence and its inferences in the light most favorable to the trial court's order, and defer to the trial court's assessment of the witnesses' credibility and accept the trial court's resolution of conflicting evidence, and presume that the trial court reviewed all of the evidence and based its decision on the child's best interest. Section 452.410.1, RSMo 2000[2]; *Smith*, 75 S.W.3d at 819. The court is presumed to act in the best interests of the child. *Id.*

*Discussion*

■ Mother raises four points on appeal. As Points I and II are dispositive, we need not address the remaining points. In her first and second points, Mother argues the trial court erred in ordering continued joint legal and physical custody because substantial evidence did not support the judgment that no change in circumstances had occurred and that modification was not in the best interests of the children. We agree.

■ We will affirm the trial court's ruling with respect to a modification of custody if it is supported by substantial evidence, it is not against the weight of the evidence, and it does not erroneously de-

---

1. At the time of filing her verified motion to modify, M.A. and H.A. were nine and ten years old, respectively.

2. Unless otherwise indicated, all further statutory references are to RSMo 2000.

clare or apply the law. *Hendry v. Osia,* 337 S.W.3d 759, 763 (Mo.App. E.D.2011). Pursuant to section 452.410.1, "the trial court must first determine whether the evidence establishes that a substantial change has occurred in circumstances of the [children and]/or the [children's] custodian and, if so, it must then consider whether the best interests of the [children] would be served by modifying custody. . . . 'In making its determination of best interest, section 452.375 requires that the court consider … the eight statutory factors included in section 452.375.2.' " *Hamer v. Nicholas,* 186 S.W.3d 884, 887 (Mo.App. W.D.2006). Section 452.375 provides:

2. The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence as defined in Section 455.010 has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian. The fact that a parent sends his or her child or children to a home school, as defined in Section 167.031, shall not be the sole factor that a court considers in determining custody of such child or children.

Section 452.375.2. Here, the record shows that a substantial change had occurred in the circumstances of Mother and the children to warrant modification of custody. Additionally, there was insufficient evidence to support the trial court's order that continued joint physical and legal custody was in the children's best interests.

■ In a joint custody case, the "breakdown of parental communication and cooperation is sufficient, in and of itself, to constitute a change of circumstances which can afford the basis for modifying a prior decree." *McCauley v. Schenkel,* 977 S.W.2d 45, 50 (Mo.App. E.D.1998). Here, Mother had *de facto* sole physical and legal custody of the children since November 2009, when the trial court ordered the temporary restraining order against Father. At the hearing on the motion to modify, Father confirmed that he had no contact with the children since late November 2009, with the exception of brief, supervised visitation allowed prior to imposition of criminal bond restrictions. He

admitted that he had not communicated with Mother, had no involvement with the children's schools, and had no knowledge of their well-being.

The breakdown of parental communication was also confirmed by Dr. Stacie Bunning (Dr. Bunning), a Licensed Court Psychologist. Dr. Bunning conducted a clinical interview of both parents as well as a mental status examination of Mother and, following her examination of both parties, concluded there had been a complete breakdown of communication between Mother and Father.

Dr. Bunning stated that during the interview Mother reported "intense feelings of anxiety and fear, distress whenever she had to go to court or otherwise be in any sort of proximity to her ex-husband," that she was "often troubled by thoughts and images of what her daughters had been subjected to," and that she was "fearful for her life and the lives of her daughters." Dr. Bunning diagnosed Mother with major depressive disorder and post-traumatic stress disorder, chronic, as a result of having been traumatized by events during her marriage to Father. She further opined that, "there is no doubt that [Mother] was re-traumatized by the recent disclosure that her child had been sexually abused. Since learning of her daughter's victimization, [Mother] has experienced the following: intrusive images and thoughts surrounding the abuse, intense psychological distress when discussing it … [and] episodes of anxiety and fear." Dr. Bunning's concluded that, in her opinion, "[Mother] truly fears her ex-husband and believes her life is in danger."

With respect to the quality of the relationship between the parties, Dr. Bunning concluded, "their relationship was extremely poor. Any communication between the two had completely broken down because of alleged threats made by [Father] against [Mother], as well as criminal charges having been brought against [Father] for sexual abuse of one of the children. [Mother] was unwilling to have communication with her ex-husband because of these issues, as well as the fact that she was fearful of him."

Father relies on *Bather v. Bather*, 170 S.W.3d 487 (Mo.App. W.D.2005) to argue for continued joint custody. Father contends that *Bather* supports his position that where charges of sexual abuse were filed and the parent charged was exonerated, absent other findings, the custody structure should be returned to that which existed prior to the charges, after a normalization period. Additionally, the trial court found that its "order was within the limits established in *Bather*, to provide for a period of restriction of custody while the relationship is normalized, and then returning to the prior custody plan."

Contrary to Father's and the trial court's assertions, *Bather* is distinguishable from the case at bar in a number of ways. While it is true that in both cases the father was charged and eventually acquitted of sexual abuse charges, the differences between the two cases are compelling.

In *Bather*, following the filing of criminal charges against father, the court found that a change in circumstances warranting modification had occurred "in that, although there is insufficient evidence to support Mother's allegation that Father abused [child], Mother is 'convinced' that Father abused [child] and, likewise, [child] 'appears to believe that said abuse occurred.' Because of Mother's and [child's] beliefs that Father abused [child], the court found that it was in [child's] best interests to modify the February 2001 judgment to reduce Father's parenting time and make his parenting time supervised for an initial period, per the schedule

set forth earlier in this opinion." *Bather*, 170 S.W.3d at 493. Later, on the basis of the evidence, the court found that, "it was proper for the court to restrict the custody plan while the abuse allegations were being investigated. It was proper for the court to slowly reintroduce [child] to her Father through the Transitions Program and thereafter." *Id.* at 496. Moreover, in *Bather*, unlike in the instant case, the child expressed a willingness to spend more time with father, a finding substantiated by the court-appointed psychiatrist, who found the relationship between the father and child "salvageable." *Id.* at 495. Here, neither child expressed an interest in seeing Father; in fact, both indicated they wanted no contact with Father. Moreover, in *Bather* there were eight Transitions Program visits between Father and daughter before trial and the Program Director concluded the visits "went well." *Id.* at 494.[3]

Here, unlike in *Bather*, there was more than sufficient evidence to support finding of a substantial change in circumstances based on the allegations of sexual abuse, including: Mother's belief, the testimony of both M.A. and H.A., the testimony of Yang, as well as the report by the Missouri Department of Social Services, Children's Division substantiating the abuse and concluding by a preponderance of the evidence that Father sexually abused M.A.

From the record, there was a substantial change in circumstances and the trial court was required to determine whether a change in custody would serve the best interests of the children. *Hamer*, 186 S.W.3d at 887; Section 452.410.1; Section 452.375.2. Under Section 452.375.2(2) and (3), we find no evidence that Mother and Father are capable of functioning as a parental unit, or that Father has had any interaction or relationship with the children at all in over a year and a half. In fact, in its judgment, the trial court related the opinion of Dr. Bunning that Mother is a knowledgeable and devoted parent who has shown herself to be a strong advocate of her children's physical, educational, medical and psychological needs, while, on the other hand, Father is aloof, unvarying in affective expression and dispassionate, even when discussing details of the sexual abuse allegations and criminal charges against him, taking no responsibility for the events that had occurred, and remaining guarded and unrevealing. Despite this evidence, the trial court nevertheless found nothing to indicate that "either party is incapable of providing for the needs of the children."

The evidence in this case indicates there has been a total failure of Mother and Father to communicate, cooperate or make shared decisions. *See Ream–Nelson v. Nelson*, 333 S.W.3d 22, 28 (Mo.App. W.D. 2010) (The parties' inability to communicate, cooperate, and make shared decisions concerning their children's welfare makes joint legal custody inappropriate, and a breakdown of parental communication and cooperation is sufficient, in and of itself, to constitute a change in circumstances which can afford the basis for modifying a prior decree.) Regardless of who is responsible for the breakdown in communication, there is a total communication breakdown nonetheless. The trial court's award of joint legal custody is inconsistent with its factual findings and the requirements of joint legal custody. *See Halford v. Halford*, 292 S.W.3d 536, 545 (Mo.App. S.D.2009) (If the

---

**3.** Based on the facts of *Bather*, we note that a gradual schedule of supervised visitation is appropriate in certain circumstances. We find, however, that the facts in *Bather* are not analogous to the ones in the instant case and would make a normalization period here untenable.

parties are unable to communicate or cooperate and cannot make shared decisions concerning their children's welfare, joint legal custody is inappropriate). This court cannot find within the 76–page judgment any basis for the trial court's determination that the parents could cooperate and make shared decisions in the future. From our review of the record, we are left with a firm and definite impression that the trial court's finding that no substantial change occurred in the circumstances of the children or either custodial parent is against the weight of the evidence. There is nothing in the record to support the conclusion that the parties were able to continue co-parenting.

Additionally, in its judgment, the trial court stated in part:

> The parties shall continue with the Therapeutic Supervised Visitation Program until released by the counselor. When the counselor believes the relationship has been normalized, the prior parenting plan, as contained in the prior Judgment of the Court shall be in full force and effect. The determination of normalization shall be memorialized by a letter from the counselor to each parent with a copy to the Court. In the event [Father] fails to cooperate with the program, he shall not have contact with the children until further order of the Court. In the event [Mother] fails to cooperate with the program, the prior parenting plan shall immediately go into effect. The Court believes this order is within the limits established in *Bather*, to provide for a period of restriction of custody while the relationship is normalized, and then returning to the prior custody plan. The Court recognizes that the process of normalization may take some time, but the needs of the children are the foremost concern of the Court. The normalization process, with the best efforts of both parents, may fail. The Court be-

lieves that due to the restrictions set forth above, the only recourse of the parties may be to return to Court with a Motion [to] Modify. It would be hoped, in that event, the parties might avail themselves of M.A.R.C.H. mediation to cooperatively develop a parenting plan to reflect the circumstances which exist at the time and produce a new parenting plan which could be submitted to the Court for approval.

■ Assuming arguendo that the normalization process were to fail, as it stands, the trial court's order would effectively reinstate the custody terms of the original decree of dissolution which were joint physical and legal custody of the two children. A court cannot abdicate or delegate, in whole or in part, its judicial power. *M.F.M v. J.O.M.*, 889 S.W.2d 944, 956 (Mo.App. W.D.1995). The trial court derives its jurisdiction to determine custody of children in marriage dissolution cases by statute. *M.F.M.*, 889 S.W.2d at 956. It has a special obligation in orders pertaining to custody of minor children and must act upon evidence adduced. *Id.* The court must act in the best interests of the child. Section 452.410; *M.F.M.*, 889 S.W.2d at 956. Permitting others to alter custody arrangements is an impermissible delegation of judicial authority. *M.F.M.*, 889 S.W.2d at 956. Here, the trial court is allowing a counselor to determine if there has been a normalization of the relationships of the parents and children to trigger or deny continued custody arrangements. Although we recognize the difficulty in fashioning a remedy in this area, the trial court cannot abdicate its responsibility to a counselor. Points I and II are reversed.

### Conclusion

The judgment is reversed with respect to the issue of insufficiency of evidence

that a substantial change of circumstances has occurred to modify the original decree. The cause is remanded to the trial court to consider whether a change of custody would be in M.A.'s and H.A.'s best interests, giving due consideration to the public policy stated in Section 452.375.4, RSMo Supp.2009, and the eight statutory factors listed in Section 452.375.2, RSMo Supp. 2009, and for such other proceedings as are not inconsistent with this opinion. Given this disposition and because the relocation issue is interrelated, the judgment is also reversed and remanded with regard to whether relocation would be in the best interests of the children, as required by Section 452.377.

ROBERT G. DOWD, JR., Presiding Judge, and SHERRI B. SULLIVAN, Judge, concur.

