**E.A.P., ex rel. V.C.I. and G.B.I., minor children, Petitioner–Appellant/Respondent**

**v.**

**J.A.I., Respondent–Respondent/Cross–Appellant.**

**Nos. SD 31844, SD 31852.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 14, 2013.

Rehearing Denied Sept. 5, 2013.

Bruce Galloway, Ozark, MO, for Appellant.

James R. Royce, Springfield, MO, for Respondent.

MARY W. SHEFFIELD, J.

These consolidated appeals involve the trial court's judgment on a motion to modify child custody. E.A.P. ("Mother") appeals, raising four points challenging the judgment's provisions regarding a "parenting coordinator."[1] J.A.I. ("Father") cross-appeals, arguing the trial court's order of child support was not supported by the evidence. Mother's first point has merit. Consequently, we reverse the judgment of the trial court and remand the case with directions. As the case is reversed for further proceedings, which may also affect the issue of child support, we need not address Father's appeal.

### Standard of Review

The trial court's decision in a court-tried case is presumed correct. *In re Marriage of Murphey*, 207 S.W.3d 679, 683 (Mo.App. S.D.2006). "We will affirm a judgment in a custody modification case if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law." *Id.*

### Factual and Procedural History

Mother and Father have two minor children, V.C.I. ("Son") and G.B.I. ("Daugh-

1. The practice of parenting coordination is relatively new. It has been defined as:

a child-focused alternative dispute resolution process in which a mental health or legal professional with mediation training and experience assists high conflict parents to implement their parenting plan by facilitating the resolution of their disputes in a timely manner, educating parents about children's needs, and with prior approval of the parties and /or the court, making decisions within the scope of the court order or appointment contract. *See* Association of Family and Conciliation Courts, *Guidelines for Parenting Coordination* 1 (2005).

ter"). In December 2008, Mother filed a paternity action in which a consent judgment issued declaring Father was the father of Son and Daughter and which granted joint legal and physical custody of the children. The parenting plan incorporated into the original consent judgment also contained a provision utilizing a parenting coordinator. Under that parenting plan, Mother and Father would "alternate week-long periods of parenting time[.]"

Within the same month that the original consent judgment was entered, the parties began having conflicts involving the parenting plan. Mother and Father constantly had disputes regarding the children. The parenting coordinator repeatedly reduced the amount of Mother's parenting time, and ultimately, Mother's visitation was limited to one day a week, every Sunday from 9 a.m. to 5 p.m., instead of the week-long period set forth in the court-ordered parenting plan.

Father filed a motion to modify child custody and child support, seeking sole legal and physical custody of the children. Mother filed a counter-motion to modify child custody and child support and a separate motion to remove the parenting coordinator. A hearing with testimony spanning six days was held regarding the pending motions to modify and the motion to remove the parenting coordinator. The trial court issued a judgment granting modification. The trial court found Mother's refusal to comply with the directives of the parenting coordinator was a substantial, continuing change of circumstance justifying modification of the parenting plan. The trial court granted sole legal and physical custody of the children to Father. The trial court's "new" parenting plan also included provisions regarding the parenting coordinator, although it removed some of the authority granted to the parenting coordinator. Under the modified judgment, the parenting coordinator was given the authority to direct the parties to:

a. Participate in individual, couple or family counseling with the appropriate therapists, psychologists, psychiatrists, or other mental health professionals as she deems appropriate.

b. Enroll the minor children in counseling or therapy with the appropriate therapists, psychologists, psychiatrists, or other mental health professionals as she deems appropriate and to fully cooperate and, as deemed necessary, participate in that counseling and therapy.

c. Enforce the provisions of this Parenting Plan.

d. Modify or amend the Contact Schedule set forth below in order to establish a schedule which is in the best interests of the minor children. Any changes to the Contact Schedule directed by the Parenting Coordinator shall be followed by the parties without the requirement of a hearing or decision by this Court.

Under the new contact schedule in the parenting plan, Mother was to receive eight hours supervised visitation per week for the first three months. Thereafter, she was to have every other weekend, two weeks per summer, and alternating holidays as parenting time. The trial court also ordered Mother to pay $328 per month in child support to Father. Both parties filed notices of appeal.

### *Discussion*

#### *Mother's Appeal: SD31844*

█ In her first point, Mother challenges the trial court's delegation of decisions regarding custody and visitation

rights to the parenting coordinator.[2] In support, she notes the trial court's order granted the parenting coordinator authority to modify the contact schedule and did not contain any provision for judicial review of the decisions made by the parenting coordinator. Although we disagree with Mother's proposition that the judgment was void, we agree that this judgment improperly relinquished exclusive judicial authority to the parenting coordinator by allowing changes to the court-ordered contact schedule to be made by the parenting coordinator instead of the court.

■■■ The trial court's judgment is not void because the trial court had subject matter jurisdiction and jurisdiction over the parties. "In the sound interest of finality, the concept of void judgment must be narrowly restricted." *Downing v. Howe,* 60 S.W.3d 646, 650 (Mo.App. S.D. 2001) (quoting *Platt v. Platt,* 815 S.W.2d 82, 84 (Mo.App. E.D.1991)). Generally speaking, a judgment is void only where the trial court lacked jurisdiction or the judgment was rendered without due process of law. *Franken v. Franken,* 191 S.W.3d 700, 702 (Mo.App. W.D.2002). "[A] judgment is not void merely because it is erroneous[.]" *In re Marriage of Hendrix,* 183 S.W.3d 582, 590 (Mo. banc 2006) (quoting *Baxi v. United Techs. Auto. Corp.,* 122 S.W.3d 92, 96 (Mo.App. E.D.2003)). Here, Mother does not challenge the trial court's subject matter jurisdiction or its jurisdiction over the parties. Hence, her claims are more properly stated as claims of trial court error.

The fact that the judgment is not void does not insulate it from review, however. As this Court prefers to address parties' claims on the merits, we will treat Mother's claim to be that the trial court erred when it delegated judicial authority to the parenting coordinator.

■■■ The trial court derives its authority to determine child custody matters from statute. *Aubuchon v. Hale,* 384 S.W.3d 217, 223 (Mo.App. E.D.2012). Under the statute governing modifications of child custody, *the court* must find a change in circumstances and that the modification is in the child's best interest. § 452.410.[3] *See also M.F.M. v. J.O.M.,* 889 S.W.2d 944, 956 (Mo.App. W.D.1995). The trial court "has a special obligation in orders pertaining to custody of minor children and must act upon evidence adduced." *Aubuchon,* 384 S.W.3d at 223. "Permitting others to alter custody arrangements is an impermissible delegation of judicial authority." *Id.* It is also impermissible to enter an order allowing a therapist to decide when conditions have changed enough to alter the parenting plan. *Aubuchon,* 384 S.W.3d at 223.

The judgment in this case runs afoul of these principles. The judgment permitted the parenting coordinator broad authority to make decisions to modify the contact schedule. Such modifications could result in substantial changes to the parenting plan's provisions regarding visitation. The appointment of a parenting coordinator cannot somehow divest the court of its exclusive authority to determine fundamental issues of custody, visitation and

**2.** In the argument section of her brief, Mother also suggests the original consent judgment was void for this same reason. The original judgment was consented to by both Mother and Father, agreed to by the trial court, became final, and neither party appealed. Furthermore, any argument regarding the original consent judgment is moot as the original

consent judgment was superseded by the modified judgment. *See St. Lawrence v. St. Lawrence,* 109 S.W.3d 225, 227 (Mo.App. E.D. 2003).

**3.** All statutory references are to RSMo Cum. Supp. (2011).

support, nor of its authority to exercise management and control of a case.

There is currently no statute in Missouri specifically authorizing the appointment of a parenting coordinator. As the trial court's authority to determine child custody derives from statute, *Aubuchon*, 384 S.W.3d at 223, an order appointing a parenting coordinator with the broad powers allowed under the modified judgment in this case is not permissible. Although Missouri legislation authorizing the use of a parenting coordinator has been proposed, it has yet to be passed into law. *See* S.B. 865, 95th Gen. Assemb. (Mo.2010). While nothing prohibits the trial court or the parties from utilizing the services of a parenting coordinator to facilitate or mediate parenting plan disputes, no one, except the trial court, can utilize the trial court's authority to actually change custody or visitation.

■ We do not mean to suggest by this conclusion that we disapprove of consensual agreements to use a parenting coordinator. On the contrary, it is the public policy of this state to encourage parties in their efforts to resolve child custody disputes "amicably through alternative dispute resolution." *See* § 452.375.4. To promote that public policy, Section 452.375.9 requires a trial court's written parenting plan to include the parenting plan arrangements specified in Section 452.310. Therefore, the parenting plan must include "[a] dispute resolution procedure for those matters on which the parties disagree or in interpreting the parenting plan...." § 452.310.8(2)(f). The guidelines adopted by our Supreme Court permit a trial court to appoint "a neutral party, such as professional counselor or trained mediator" to provide non-binding counseling or mediation services to the parent. *See* Section C, Dispute Resolution, in the parenting plan form appended to § 452.310; Section 17,

Dispute Resolution Procedure in the Parenting Plan form for use by self-represented parties. The trial court simply may not delegate essential matters of custody and visitation, such as modifying the contact schedule, to a parenting coordinator.

In concluding the parenting coordinator provision in this case improperly delegated judicial authority, we do not mean to imply the trial court erred in finding a change in circumstances based on Mother's failure to comply with the directives of the parenting coordinator. Section 452.410 provides "the court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410.1 Here, the parties originally believed a parenting coordinator would facilitate the implementation of the parenting plan and filed a consent judgment to that effect. Mother's actions in failing to comply with the parenting coordinator's directives set forth in the parenting plan were a change in circumstances. Her actions and the ensuing disagreements regarding the parenting plan were a change in the circumstance of at least one of the children's custodians sufficient to warrant modification.

The modified judgment is reversed because it impermissibly delegated judicial authority to the parenting coordinator when it gave the parenting coordinator authority to modify the contact schedule. On remand, the trial court is ordered to enter a new parenting plan consistent with this opinion. "In that regard, it is for the trial court to decide, in the exercise of its discretion, whether to reopen the record and receive additional evidence on remand[,]" *Ream–Nelson v. Nelson*, 333

S.W.3d 22, 29–30 (Mo.App. W.D.2010) (quoting *Hamer v. Nicholas,* 186 S.W.3d 884, 889 (Mo.App. W.D.2006)), or to consider the existing evidence as the court deems appropriate.

Mother's first point is granted. As our resolution of this point requires remand, Mother's remaining points need not be addressed.

### *Father's Appeal: SD31852*

In the sole point in his cross-appeal, Father argues the trial court's award of child support is not supported by the evidence because Mother did not testify or present evidence to rebut the calculations in Father's Form 14. As the Court has reversed and remanded requiring the creation of a new parenting plan which may include modification of the child support amount after the trial court's review, this matter is remanded as well.

### *Decision*

The trial court's judgment is reversed. The case is remanded (1) with directions to enter a new parenting plan consistent with this opinion and reflecting the best interests of the children and (2) for such other proceedings as are not inconsistent with this opinion.

JEFFREY W. BATES, J., and DON E. BURRELL, C.J., concur.