

**In the**
**Missouri Court of Appeals**
**Western District**

| | | |
|---|---|---|
| **KRISTY RHEA WOOLERY,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | **WD85896** |
| v. | ) | **OPINION FILED:** |
| | ) | **NOVEMBER 21, 2023** |
| **HARRY DEAN WOOLERY,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
**The Honorable Keith M. Bail, Judge**

**Before Division One: Edward R. Ardini, Jr., Presiding Judge,**
**Anthony Rex Gabbert, Judge, Thomas N. Chapman, Judge**

Harry Woolery appeals the judgment of the Pettis County Circuit Court modifying a prior judgment. The trial court changed child custody from joint to sole, modified child support, entered a new parenting plan, and addressed whether either party was in contempt. In five points on appeal, Woolery claims the trial court erred in finding a change of circumstances, calculating child support, ordering him to pay extraordinary expenses, and finding him in contempt. The judgment is affirmed in part, reversed in part, and amended in part.

**Facts**

In December 2011, the Pettis County Circuit Court entered a first amended judgment dissolving the marriage of Harry Woolery ("Father") and Kristy Woolery ("Mother"). The judgment awarded Father and Mother joint legal and physical custody

of their two children ("Children") and ordered Father to pay child support in the amount of $636 per month. Children were almost six years old and four years old at the time. The judgment granted Father custody of Children during the school year on alternating weekends and on Wednesdays. During the summer, the parties were ordered to share week on/week off visitation. Shortly thereafter, Father moved an hour and a half away from Mother. Father remarried in 2017 to a woman who has shared custody of her two children.

In November 2021, Father filed a motion to modify, a motion for contempt, and a motion to quash garnishment. He alleged that there have been disputes and conflicts with scheduling visitation and sought an amendment of the parenting plan to clarify the joint legal and physical custody. He also sought a larger block of time with Children in the summer. Father further alleged that Mother had failed to execute a quit-claim deed as required by the original judgment and that he had satisfied a judgment against him for Mother's attorney fees.

In December 2021, Mother filed a counter motion to modify and for contempt. She alleged that Father has been non-cooperative and unreasonable in scheduling matters concerning Children. She alleged the following: One child is in high school and the other is entering it. Children have increased expenses because they are older. Father is unwilling to travel to allow Children to honor their activities and commitments. Father has prevented Children from participating in extracurricular activities and sports during his time with Children, including school activities. The oldest child has a job, and Father

2

has demanded that the oldest child not work during the time Father has Children. Children miss attending social events with their friends that occur during Father's time with Children. Many of these problems are caused by Father's voluntary relocation away from Children, and the situation is unfair to Children. Children do not want Father to have shared custody of them. Mother sought sole legal and physical custody of Children. Mother also alleged Father failed to pay half of the cost of a child's orthodontic treatment as required by the original judgment.

The matter proceeded to a bench trial in September 2022. Father and his wife testified in support of Father's motion. Mother, Children, a former baseball coach of youngest child, and the wife of a former soccer coach of oldest child testified in support of Mother's motion.

Judgment was entered in December 2022. The trial court found that Father failed to meet his burden of proof that Mother's failure to execute a quit-claim deed was willful and contumacious. Mother executed the quit-claim deed while this matter was pending. The trial court denied Father's motion for contempt.

The trial court found that Father's failure to pay for half of his child's orthodontic treatment as required by the original judgment was willful and contumacious. Father did not believe the orthodontic care was necessary but did not present any evidence supporting that belief and did not attend any orthodontic appointments to question the necessity of treatment. It sustained Mother's motion for contempt.

The trial court also found that, of the $4047.98 garnished from Father, Mother received $1216.05 more than she should have. It entered satisfaction of judgment, found the motion to quash the garnishment moot, and applied the overcollection of money to the amount owed for orthodontic treatment.

The trial court awarded Mother sole legal and physical custody of Children. It adopted a new parenting plan. The trial court also ordered Father to pay child support in the amount of $953 per month.

This appeal follows.

## Standard of Review

"In a court-tried case, we will affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Langston v. Langston*, 615 S.W.3d 109, 115 (Mo. App. W.D. 2020) (internal quotation marks omitted). "We view the evidence, and permissible inferences therefrom, in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." *Id*. (internal quotation marks omitted). "We defer to the trial court's factual findings, giving due regard to the trial court's opportunity to judge the credibility of witnesses." *Id*. (internal quotation marks omitted).

"The circuit court's judgment in a civil contempt proceeding will not be disturbed on appeal absent a clear abuse of discretion." *Frawley v. Frawley*, 637 S.W.3d 140, 147 (Mo. App. W.D. 2021). "An abuse of discretion occurs when the ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable

4

as to shock the sense of justice and indicate a lack of careful consideration." *Id*. (internal quotation marks omitted). "The circuit court's judgment in a civil contempt proceeding must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id*. (internal quotation marks omitted). "We defer to the trial court's credibility determinations and its weighing of the evidence." *Id.* (internal quotation marks omitted).

**Point I**

In his first point on appeal, Father claims the trial court erred in finding there was a change of circumstances warranting modification of joint custody to sole custody. He states that Mother based her modification request on changes to the children's sporting activities, social life, and work activities. Father argues that these changes would have been foreseen by the trial court at the time of the original decree.

"Section 452.410[1] governs the modification of child custody in two steps." *Hark v. Hark*, 567 S.W.3d 671, 677 (Mo. App. E.D. 2019). "A movant must first show a change has occurred in the circumstances of the children or the custodial parents based upon facts that have arisen since the prior decree or facts that were unknown to the court at the time of the prior decree." *Id*. "If the necessary level of change in circumstances is shown, movant must next show modification is necessary to serve the best interests of the

---

[1] All statutory citations are to RSMo 2016 as updated through the most recent cumulative supplement unless otherwise indicated.

5

children." *Id*. "The change required in the first step differs based on the type of modification sought." *Id*. "When physical custody is modified from joint to sole, a 'substantial change' must be shown." *Id*.

"Not every change in circumstances calls for a modification of custody." *Id*. "When deciding a physical custody modification, the court only considers changes related to the custodial parents' abilities to care for the children." *Id*. "[A] change in the circumstances of the parents' use of parenting time and their sharing of it in such a way as to assure the child[ren] of frequent, continuing, and meaningful contact with both parents is the main concern of the court in assessing which changes should be considered." *Id*. at 678 (internal quotation marks omitted). "Substantial change requires a more rigid burden using the same physical custody factors." *Id*.

The trial court found that the changed circumstances included Children's interests, the wishes of Children, and the ongoing conflict between Mother and Father regarding Children's schedules and custody schedules. The trial court stated that both Mother and Father agreed that the current parenting plan was not working.

We note that this case began when Father filed a motion to modify. In that motion, Father identified the disputes and conflicts with Children's schedules. He stated in his motion that "there has been a substantial and continuing change in circumstances." Mother made the same statement in her response and motion to modify. Father is not now permitted to argue that the trial court erred in finding the very thing Father advocated for in his own motion to modify. *See Prevost v. Silmon*, 645 S.W.3d 503, 513

(Mo. App. W.D. 2022) (mother could not argue that the trial court erred in finding that the parties are no longer able to function as a joint legal custody unit and a custodial change is necessary where mother filed a competing motion for sole legal custody and also asserted the parties were unable to function as a unit); *Querry v. Querry*, 382 S.W.3d 922, 928 (Mo. App. W.D. 2012) ("Therefore, as both parties pled and argued a substantial change in circumstances since the prior decree that warranted modification of the custody arrangement, the court did not and, perhaps, could not err in finding the same."); *Clayton v. Sarratt*, 387 S.W.3d 439, 448 (Mo. App. W.D. 2013) ("[H]aving pleaded and presented evidence of a change in circumstances warranting modification of custody, Father cannot now be heard to complain that there was no change in circumstances.").

Even if we did consider Father's claim, it is without merit. Father argues on appeal that Mother failed to present evidence showing that the changes relating to Children's sporting activities, social life and work activities rose to a level that would have been unknown to the court at the time of its prior judgment. We disagree. At the time of the initial custody judgment in 2011, Children were almost six years old and four years old. The modification proceeding occurred more than a decade later, when Children were significantly older. Moreover, Father changed jobs and moved an hour and a half away from Children in 2012. While Father informed the court of his intention to relocate during the original trial, he did not move until after the original judgment was entered. The parties had not experienced the reality of Father being a three hour round trip away from Children. Further, Father remarried in 2017 to a woman who has shared

7

custody of her two children. The combination of the children becoming teenagers with their own specific interests, the impact of Father's house being a three hour round trip away from Children's school, friends, and activities, and the fact that Father now has to consider the schedule of his step-children are a substantial change not known by the trial court at the time of the original judgment. *See, e.g., Tienter v. Tienter*, 482 S.W.3d 483, 491 (Mo. App. E.D. 2016) ("Thus, the testimony adduced at the hearing establishes a substantial change in circumstances. Even if no single factor discussed above would have alone established changed circumstances, the combination of the factors clearly does."); *Morgan v. Morgan*, 497 S.W.3d 359, 373–74 (Mo. App. E.D. 2016) (finding that an "incessant breakdown" in communication and cooperation that had arisen since the entry of the original custody determination was a substantial change in circumstances); *McIntosh v. McIntosh*, 400 S.W.3d 860, 863 (Mo. App. E.D. 2013) ("Changes in employment and marital status are substantial changes that can support modification of a child custody order.").

Father also argues that Mother created the disputes relating to Children's activities when Mother allowed the activities to be scheduled without first consulting Father. He argues that Mother cannot create a conflict and then use the conflict as the basis for changing custody. Mother did not create this conflict. It was created by Children's desires to engage in activities, work, and see friends during the time they are with Father. The conflict was exacerbated by Father's refusal to allow Children to travel to the area where their school, friends, and work are during his parenting time. The trial court

8

explicitly found that Father's inflexibility, attitude, and non-support toward Children's activities and interests have hurt that relationship. We defer to that finding under our standard of review.

Father's first point relied on and argument section primarily focus on whether there was sufficient evidence to support a finding of a substantial change in circumstances to warrant modification. His point states that "[t]he trial court erred in holding there was a change in circumstances warranting modification of joint physical custody to sole physical custody…." When discussing that this issue is preserved, Father states in his brief that "[t]his point challenges whether substantial evidence supported the trial court's decision that there was a change of circumstances sufficient to warrant modification." His last sentence in his argument section states that "Mother failed to meet her burden to prove there had been a substantial change in circumstances in that her evidence related solely to Father not always agreeing to the children missing their custody time with Father due to sporting, social and extracurricular activities planned by the children and Mother."

Despite this, Father's first point and argument both reference claims unrelated to a substantial change in circumstances. Father asserts the trial court erred in adopting a parenting plan that allowed the children to determine whether any custody time with him would occur. In support of this, Father cites *E.A.P. v. J.A.I.*, 421 S.W.3d 460 (Mo. App. S.D. 2013). That case involved an improper delegation of judicial authority and not a change in circumstances permitting modification of custody. *Id*. at 464. ("In concluding

9

the parenting coordinator provision in this case improperly delegated judicial authority, we do not mean to imply the trial court erred in finding a change in circumstances based on Mother's failure to comply with the directives of the parenting coordinator."). Father also states that the trial court erred adopting a parenting plan that severely limits his parenting time with Children. He cites *Barancik v. Meade*, 106 S.W.3d 582 (Mo. App. W.D. 2003) in support. Whether the parenting plan is too restrictive goes to the best interest of Children and not whether a substantial change in circumstances existed. *See id*. at 591 ("Although it may be in the child's best interests to allow and encourage the child to participate in athletics or other extracurricular activities, it is equally in the child's best interests that he have a regular, consistent pattern of visitation with the Father."). To the extent Father argues that the court's judgment improperly delegated judicial authority or was not in Children's best interest, which are separate issues from whether a substantial change in circumstances existed, those claims are not preserved for appellate review under Rule 84.04.[2] *See State v. Seaton*, 628 S.W.3d 424, 430 (Mo. App. W.D. 2021); *KDW Staffing, LLC*, 584 S.W.3d at 837 n.4 (Mo. App. W.D. 2019) (holding that issues raised in the argument portion of a brief that exceed the scope of the point relied on are not preserved for appellate review pursuant to Rule 84.04).

---

[2] Father's initial brief with this court was struck for failure to comply with Rule 84.04. We address Father's amended brief in this appeal.

10

The trial court's finding that a substantial change in circumstances not known at the time of the original judgment occurred is supported by substantial evidence. The point is denied.

**Point II**

In his second point on appeal, Father claims the trial court erred in finding there was a change of circumstances warranting modification of joint custody to sole custody. He states that the modification of custody from joint to sole can only be done when the parties cannot communicate and cooperate to such an extent that joint custody is no longer possible. Father argues that the only evidence about the disagreement between Mother and Father was that they disagreed about changes to Father's parenting time.

In his argument section, Father notes the public policy in section 452.375.4 favoring joint custody. That statute explicitly discusses the best interest of the child and not a change in circumstances. Section 452.375.4 ("The general assembly finds and declares that it is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child…"). Father cites *A.J.K. by R.K. v. J.L.*, 980 S.W.2d 81 (Mo. App. E.D. 1998), for the proposition that joint custody is a viable option even if the parents struggle to communicate. Again, that is a statement referring to the best interest analysis and not whether a substantial change in circumstances existed. Father cites *Luther v. Vogel*, 863 S.W.2d 902, 904 (Mo. App. E.D. 1993), for the proposition that parents disagreeing and being acrimonious does not support the denial of joint custody.

11

That case was discussing the best interest of the children and not whether a substantial change in circumstances existed.

It seems Father has confused the determination of a substantial change in circumstance with the best interest determination even though they are two different requirements under section 452.410. Perhaps Father intended to argue that the trial court's award of sole custody to Mother was not in Children's best interest. However, the words "best" or "interest" do not appear anywhere in Point II or its argument section. "Issues that are raised only in the argument part of the brief and are not contained in the point relied on are not preserved for review." *In re Marriage of Fritz*, 243 S.W.3d 484, 488 (Mo. App. E.D. 2007) (citing Rule 84.04). Further, this court will not become Father's advocate by speculating on arguments he has not made. *Burnette v. Aramark Services, Inc.*, 600 S.W.3d 39, 42 (Mo. App. E. Dist. 2020) (citing Rule 84.04). Father's claim that the trial court erred in finding substantial changed circumstances warranting modification from joint custody to sole custody was addressed in Point I. The point is denied.

**Point III**

In his third point on appeal, Father claims the trial court erred in its calculation of child support. He stated that substantial evidence was not presented that Children have extraordinary expenses. Father argues that expenses relating to cell phones and motor vehicle insurance should not have been considered extraordinary expenses.

12

Line 6e of Form 14 instructs the trial court to factor "[o]ther extraordinary child rearing costs" into the child support calculation. These costs include, but are not limited to, the following: "tutoring sessions, special or private elementary and secondary schooling to meet the particular educational needs of a child, camps, lessons, travel and other activities intended to enhance the athletic, social or cultural development of a child." Form 14, Line 6e, Comment A. "These expenses are not included in the basic child support calculation, but the trial court retains the discretion to include them in its final child support calculation." *Pickering v. Pickering*, 314 S.W.3d 822, 837 (Mo. App. W.D. 2010). "Moreover, the trial court has discretion to accept a spouse's testimony that such fees are actually incurred." *Id*. "An award of extraordinary expenses must not include a redundancy in the children's living expenses already, and must otherwise be just and reasonable." *Id*. (internal quotation marks omitted).

The trial court's Form 14 included $234 in extraordinary expenses credited to Mother. In its judgment, the trial court stated that this amount was for cell phones for Children and car insurance for the older child. Father argues that a finding that these expenses are extraordinary expenses is not supported by substantial evidence. We agree.

In *Pickering*, this court addressed whether the cost of cell phones and car insurance for teenage children was a permissible extraordinary expense. "As noted, in order for an expense to qualify as an extraordinary expense, it should be related to an activit[y] intended to enhance the athletic, social or cultural development of [the] child[ren]." *Id*. at 838 (internal quotation marks omitted). "Moreover, an award of

13

extraordinary expenses must not duplicate ordinary living expenses … which are covered by the presumed, basic child support amount." *Id*. (citing Form 14, Line 5).

When discussing whether the cost of a cell phone is a necessary cost, this court stated "the issue is not whether the cell phones are necessary, but whether their cost meets Form 14's definition of extraordinary expense." *Id*. In *Pickering*, the court found that the wife did not cite evidence "that would establish that the children's use of cell phones is integral to, or even associated with, an activit[y] intended to enhance the athletic, social or cultural development of [the] child[ren]." *Id*. (internal quotation marks omitted). "Accordingly, the trial court misapplied the law in including the cost of cell phones in Line 6e of Form 14." *Id*.

The husband in *Pickering* argued that his paying car insurance for one of the children should qualify as an extraordinary expense. *Id*. This court rejected that argument for the same reasons. *Id*. "Husband cites no evidence that the car insurance is integral to, or even associated with, an activit[y] intended to enhance the athletic, social or cultural development of [the] child[ren]." *Id*. (internal quotation marks omitted). "Car insurance, like cell phones, may be a necessary expense in some cases, but, as noted, the issue here is whether such expenses meet Form 14's definition of extraordinary expense." *Id*. "As explained, they do not." *Id*.

"Many necessary expenses do not fall within the definition of extraordinary expense." *Id*. at 838 n.21. "Such expenses are presumed to be covered by the basic child support amount." *Id*. (citing Form 14, Line 5). "To permit expenses covered by basic

14

child support to also be included as extraordinary expenses would permit double recovery by the support-receiving spouse, which is prohibited." *Id.*

In this case, the trial court's finding that Children's cell phone and car insurance expenses are extraordinary expenses is not supported by substantial evidence. We are not holding that costs related to cell phones and motor vehicle insurance cannot ever be appropriately considered extraordinary expenses. In today's society with the lack of access to public telephones, cell phones may be the only means of communication for parents and children. Where other means of transportation is not available, children who are licensed drivers may need to drive on their own to attend school, social and athletic activities. Again, as in *Pickering*, no evidence was presented by Mother to support such costs being awarded as extraordinary expenses.

The presumed child support amount on the Form 14 is intended to cover the children's ordinary living expenses. *Id.* at 838. In addition to ordinary expenses covered by the presumed child support amount, the court can award extraordinary expenses. *Id.* Those expenses "should be related to an activit[y] intended to enhance the athletic, social or cultural development of [the] child[ren]." *Id.* (internal quotation marks omitted). In this case, Mother did not present any evidence that the costs of cell phones and motor vehicle insurance are more than ordinary living expenses for Children that are covered by the presumed child support amount. As in *Pickering*, no evidence was presented that these costs were integral to, or even associated with, an activity intended to enhance the athletic, social or cultural development of Children. *Contrast Lokeman v. Flattery*, 146

15

S.W.3d 422, 427–28 (Mo. App. W.D. 2004) (finding the cost of lunches while at summer camp to be an extraordinary expense); *Foraker v. Foraker*, 133 S.W.3d 84, 96-97 (Mo. App. W.D. 2004) (noting that father did not question the propriety of the court ordering him to pay extraordinary expenses including gas and oil expenses for the children's cars, maintenance expenses for the children's cars, and a portion of the children's annual automobile insurance).

The point is granted.

## Point IV

In his fourth point on appeal, Father claims the trial court erred in ordering Father to pay child support and one half of extraordinary expenses. He states that school supplies, school clothing and shoes, and expenses for a motor vehicle, motor vehicle insurance, and motor vehicle maintenance should not be considered extraordinary expenses. Father also argues that no evidence was presented regarding the amount of these expenses.

Section 452.375.9 states in relevant part that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 8 of section 452.310." Section 452.310.8 states in relevant part:

> The petitioner and respondent shall submit a proposed parenting plan…. The proposed parenting plan shall set forth the arrangements that the party believes to be in the best interest of the minor children and shall include but not be limited to … [h]ow the expenses of the child, including child care, educational and extraordinary expenses as defined in the child support

16

guidelines established by the supreme court, will be paid including … [t]he payment of extraordinary expenses of the child, if any….

In this case, the trial court ordered the following in the parenting plan:

Each parent shall pay one-half of extraordinary child rearing expenses incurred on behalf of the child. Extraordinary expenses include, but are not limited to the following:
Educational expenses for college or post-secondary education,
Special, private or parochial elementary and secondary schooling expenses,
School supplies,
School clothes and shoes,
Tutoring sessions,
Camps,
Lessons,
Athletic activities, including costs of the activity and equipment needed for the activity.
Extracurricular activities,
Travel and other activities intended to enhance the athletic, social or cultural development of a child.
…
*Other Expenses For The Children:* Each parent shall pay up to $7,000.00 each to acquire a vehicle for each, and pay 50% of the sales tax for each vehicle.  Each parent will pay one-half of the children's vehicle expenses, including but not limited to, maintenance and repairs for the vehicle up to $2,000.00 per year per child, such that each parent's one-half will be limited to $1,000.00 per year per child.  The cost of insurance for [the older child] is included in the Form 14 calculation. The cost of insurance for [the younger child] shall be paid one-half by each parent when it is incurred. The cost of the children's monthly cell phone plan is included in the Form 14 calculation.

Father challenges the following extraordinary expenses: special, private or parochial elementary and secondary schooling expenses; school supplies; school clothes and shoes; and expenses for a motor vehicle, motor vehicle insurance and motor vehicle maintenance.

17

No evidence was presented that Children attend or need to attend a private or parochial school. No evidence was presented that the school Children attend required special school supplies, clothing, or shoes. Thus, expenses related to Children's schooling, school supplies, and school clothes and shoes are not extraordinary and are covered by the basic child support amount. *Pickering*, 314 S.W.3d at 838 n.21. Allowing them as an extraordinary expense is permitting Mother to receive a double recovery. *See id*.

The allowance of extraordinary expenses for vehicles for Children was also error. As in Point III, no evidence was presented that the cost of vehicles for Children is more than normal expenses covered by the basic child support amount. No evidence was presented that these costs are integral to, or even associated with, an activity intended to enhance the athletic, social or cultural development of Children. The point is granted.

**Point V**

In his fifth point on appeal, Father claims the trial court erred in finding him in contempt for failing to pay for half of orthodontic treatment. He states that the prior judgment did not require him to pay this expense. Father argues he never agreed the expense was necessary, and Mother did not present evidence that the expense was necessary.

"A party alleging contempt establishes a prima facie case for civil contempt when the party proves: (1) the contemnor's obligation to perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation." *Frawley*, 637 S.W.3d at

18

150 (internal quotation marks omitted). "The alleged contemnor then has the burden of proving that person's failure to act was not due to [his] own intentional and contumacious conduct." *Id*. (internal quotation marks omitted).

The 2011 judgment required Mother and Father to each "pay one-half of all non covered and deductible expenses for necessary medical, dental, orthodontic, vision, prescription and psychological care incurred for the parties' minor children." The trial court found that Father failed to abide by these terms when he refused to pay one-half of orthodontic expenses amounting to $1292.50. Father argues that the evidence showed that Father disagreed with Mother's decision to get their child braces and that he was denied the opportunity to get a second opinion. Father claims no evidence was presented that braces were necessary.

Mother testified that Father was aware that Mother took their child to the orthodontist in March 2020 to discuss getting braces. In July 2020, Mother reached out to Father to see what his thoughts were about that consultation. Father stated he would talk to his wife about the issue.

Mother reached out to Father in August 2020, and Father stated that his insurance provider at work would be changing and that he would like to wait until after the first of the year. Father also stated that he had other children in his household who needed braces first. Mother reached out to Father in January 2021 about the braces. Father stated he wanted a second opinion. Mother took their child to a second orthodontist.

19

Father was informed of this appointment ahead of time and did not come to the appointment. Mother sent Father the information from the second consultation.

Father informed Mother that he wanted to take their child to an orthodontist close to where he lived for a consultation. Mother felt that the orthodontist being that far away was not feasible. Mother could not drive that far for orthodontist appointments. Mother intended to attend the appointment Father made anyway but the appointment was cancelled because of a conflict with soccer.

In March or April of 2021, Mother informed Father that she was proceeding with the cheaper of the two estimates. Mother testified that the braces were not just for cosmetic reasons. The braces would adjust their child's jaw and would help with headaches. The braces should also help with the child's breathing given that the child had a deviated septum. Mother shared all of the information she had with Father and provided Father with the contact information for the orthodontist. Father never called or spoke with the orthodontist. Father testified that one of his step-children received orthodontic work during this time.

The trial court found that the braces were necessary, that Father was obligated to pay for half of the cost, that Father failed to pay for half of the cost, and that Father willfully and contumaciously failed to pay his required half. Given our standard of review, the trial court did not abuse its discretion in making these findings. The point is denied.

## Conclusion

The trial court's award of sole legal and physical custody to Mother is affirmed. The trial court holding Father in contempt for failure to pay half of orthodontic treatment is affirmed. The trial court's allowance of $234 in extraordinary expenses on the Form 14 was error. The trial court's parenting plan requiring Father to pay extraordinary costs associated with special, private or parochial elementary and secondary schooling expenses; school supplies; school clothes and shoes; and expenses for a motor vehicle, motor vehicle insurance and motor vehicle maintenance was error. The judgment is affirmed in part and reversed in part. Pursuant to Rule 84.14, Father's child support obligation is modified from $953 per month to $812 per month. Further, the judgment is amended to removed Father's obligation to pay extraordinary costs associated with special, private or parochial elementary and secondary schooling expenses; school supplies; school clothes and shoes; and expenses for a motor vehicle, motor vehicle insurance and motor vehicle maintenance.

_____
Anthony Rex Gabbert, Judge

All concur.

21